14675

SMITH *ET AL.* v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

(196 S. E., 879)

*Messrs. Thomas, Lumpkin & Cain,* for appellant,

*Messrs. Stevenson & Lindsay,* for respondents,

April 28, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

These suits were brought by the respondents against appellant for a decree declaring in full force and effect two policies of insurance issued by appellant on the life of the re-

spondent Thomas H. Smith, and to prevent the enforcement of the lapse thereof on account of the non-payment of the premiums when due under an extension agreement. The respondent Daisy H. Smith is a party to the cause only by reason of being the beneficiary designated in the policies. Hereinafter, the word "respondent" will have reference to only Thomas H. Smith, the insured.

The material facts of the cases are not in dispute. The two actions are identical, and the facts identical, except for difference in the number of the policies and the amount, and against one of the policies was a loan.

We draw heavily upon the decree of Judge Dennis in our statement of the facts, which follows:

The respondent purchased two policies from the appellant on May 20, 1919. The policies are what are commonly known as participating twenty year pay policies with disability and double indemnity features, the premium being payable on an annual basis on the above anniversary date; the annual premium on the $3,000.00 policy being $134.70, and on the $2,000.00 policy $89.80. The policy provided that they were on an annual basis, but the premium might be paid in semi-annual or quarterly installments, upon the request of the insured, with the insurer's written approval, and upon the adopted rates for fractional premiums.

In January, 1933, the respondent became totally disabled because of arteriosclerosis of the coronary artery, and this disability was admitted by the appellant as of April 5, 1933. The disability provision of the policies in addition to the waiver of premiums provided for the payment to the insured of certain designated amounts beginning six months from proof of disability. The payment provided under the policies began in October, 1933, and were paid by the insurance company for that month and for November. The respondent's condition improved some, and he informed the appellant on November 10, 1933, of his desire to attempt the resumption of his practice of medicine, and it was agreed

that he should attempt work for a period of three months, and if at the end of that time he was unable to continue, the disability benefits would be resumed. He was and has been able to continue with his work, in a limited way, but it has been necessary for him, from time to time, to take frequent rest periods throughout the years. The payment by the company of all disability benefits under the policies was therefore discontinued, but of course remained a feature of the policies. The respondent paid the annual premium due on the policies May 20, 1934, but on May 20, 1935, it was inconvenient for him to pay the annual amount due on both policies so on May 30th he paid on the $134.70 premium the sum of $56.89 and on the $89.80 premium $33.67, and requested an extension for the payment of the balance to August 20, 1935, signing the usual extension agreement. Both the request for extension and the extension agreement were specific that there was no grace period beyond the extended date. At the same time plaintiff paid $61.74 as interest on a loan of $1,029.00 borrowed against the $3,000-.00 policy. On August 19, 1935, the respondent left his home for one of his periodical rests, returning to Bennettsville about September 1st. Before leaving on his trip he had left with his secretary a check to be forwarded to the company for the balance of his premiums on the two policies in question, but in some way, through oversight, the check was not forwarded. All of the time, however, respondent testified he was under the impression that he had a grace period of 30 days in addition to the extended date. This was brought about by the fact that some of his policies did have such a grace period, and he was under the impression that it was the policies in question. However, immediately on his return he sent to the company check for balance of the premiums due, the company acknowledging receipt by its letter of September 2, which is in the record. The letter of receipt advised the respondent that the policies were temporarily lapsed, and inclosed a form of "Request for reinstatement." Also in the letter was the company's nonwaiver receipt. This

request for reinstatement was in the form of a certificate, and in part was as follows:

"I hereby certify and represent that I am in good health; that except as stated below, I have had no disease, illness or injury, have not consulted nor been treated by any physician or practitioner, have not been a patient in any hospital or sanitarium, and that there has been no change in the health record of my family, within the past five years.

"I hereby agree that if the above numbered policy is reinstated by the Society, such reinstatement shall be based upon the representations contained in this declaration, which is personally signed by me; and that the reinstatement if granted shall not take effect until all premiums in arrears, with interest, have been duly paid during my continued good health."

On September 3, the respondent replied to the last-mentioned letter, in which he told the company it was impossible for him to sign a certificate that he was in good health, which fact was known to it, and on September 11th he received from the company a letter declaring the policies to be lapsed, and inclosing therein its check for $56.88, which was stated to be an excess deposit of $20.20 over the required amount under policy 2451-953 ($2,000.00 policy), and $36.68 over the required amount under policy 2,451,-954. This check was immediately returned by the plaintiff to the defendant on September 12, 1935. Then on October 7, 1935, this check was resent to plaintiff along with another of its checks for $135.62; the last being the amount sent by the plaintiff to defendant on September 1st for the balance of his premiums on the two policies, and on October 9th both checks were returned by plaintiff to the defendant, who acknowledged receipt of them on October 23d, stating that the checks were being held unused and subject to the insured's order, without liability.

In 1931 the plaintiff had borrowed against his $3,000.00 policy the sum of $1,029.00, which with interest from May 20th to August 20th amounted to $1,044.56. The cash sur-

render value of this policy on that date was $1,480.41, which, together with the surrender value of $23.40 of additional insurance purchased by prior dividends, made a total cash surrender value of $1,503.81. After deducting the loan above mentioned, there was left a net balance of $459.25. Nothing had been borrowed against the $2,000.00 policy, and its cash surrender value together with outstanding dividend additions amounted to $993.60. In accordance with the terms of the policies the above values with certain other additions were declared by the company to be used to purchase the extended term insurance without future participation or rights to loan or the double indemnity or disability benefits. The $3,000.00 policy by reason of the loan was reduced to $1,994.44, and the extended term was to November 12, 1944, and the extended term on the $2,000.00 policy was to February 7, 1959.

We think it well to here set out the "Conditions of Extension":

"The within policy shall continue in force until the extended date without grace upon the following conditions: If the difference between the total deposit and the amount of the premium, with interest upon such difference from the original due date of the premium at the rate of five per cent. per annum, shall be paid to the Equitable Cashier on or before the extended date, the same, together with the amount deposited, shall then be accepted in payment of the premium and the policy shall be continued as if the premium had been paid when due; if such payment is not made on or before the extended date, without demand or notice the Equitable shall retain out of the amount deposited an amount equal to 5% of the premium if payable annually, 10% if payable semi-annually, or 20% if payable quarterly, except that if the policy be on the term plan, 10% of the premium if payable annually, 20% if payable semi-annually, or 40% if payable quarterly shall be retained for each month from the original due date of the premium to the extended date, as compensation for the privilege of this extension and on de-

mand shall repay the balance to the depositor and after such extended date all rights under the policy shall be the same as if this agreement and deposit had not been made, except that the time for the electing any option upon lapse granted by the policy shall begin to run from the extended date and not from the due date of the premium. If death occurs before the extended date, the difference between the total deposit and the amount of the premium with interest upon such difference at the rate of 5% per annum shall be deducted from the amount payable under the policy. Neither payment of said difference nor of said premium shall be waived, under any provision in said policy for total and permanent disability benefits, by reason of disability commencing or becoming effective after the original due date of the premium.

"Due and sufficient notice with regard to this premium, whether required by the statutes of any State or otherwise, has been given, and in consideration of the granting of the extension applied for every other or further notice has been waived.

"This extension will not be binding unless the Society has received actual payment of any remittance tendered otherwise than in cash."

The questions presented by the appeal are:

1. Did the trial Judge err in holding that a Court of equity should relieve against forfeiture of the policies of insurance resulting from the nonpayment of premium where the only ground offered to invoke equitable relief was inadvertence or oversight?

2. Did the trial Judge err in holding that appellant had estopped itself from enforcing a forfeiture of the policies by demanding and requiring a deposit in excess of the amount of premium necessary to carry the policies to the extended period, and that, by so doing, the agreements had the effect of changing the mode of premium payments to quarterly payments?

We are unable to perceive any evidence of waiver of the prompt payment on the extended due date of the balance of the premium by reason of the fact that a deposit for more than an amount sufficient to keep in effect the policies to the extension date was demanded and collected. It was a matter of simple contract, and respondent's every gesture and act evidenced the fact that there was no misunderstanding as to when the balance of the premium had to be paid. It is not claimed that respondent was suffering from any disability which prevented him from paying the premiums. It is not claimed that respondent was not fully aware of the due date, because, according to his statement, he knew that the premium had to be paid on August 20, 1935, the date fixed in the extension agreement, and he therefore wrote a check on August 18th for the balance of his premiums and instructed his secretary to mail same to appellant. Although respondent says he thought he had a grace period of 30 days, he did not rely on this.

There is no ambiguity in the extension agreement, and it would therefore appear that respondent is bound by the plain terms thereof. While all Courts of equity abhor forfeitures, yet a Court of equity cannot substitute a contract for the one entered into.

The recognized law in this State with reference to the failure to pay insurance premiums when due is fully set forth in an able opinion by Mr. Justice Fishburne in the case of *Kittles v. General American Life Ins. Co.*, 182 S. C., 162, 173, 174, 188 S. E., 784, 789, from which we quote:

"In the case of *Bergholm v. Peoria Life Insurance Company of Peoria, Ill.*, 284 U. S., 489, 52 S. Ct., 230, 231, 76 L. Ed., 416, the United States Supreme Court said:

" 'Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. *Imperial Fire Ins. Co. v. Coos County*, 151 U. S., 452, 462, 463, 14 S. Ct., 379, 38 L. Ed., 231. As long ago pointed out by this Court,

the condition in a policy of life insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a Court of equity cannot grant relief. *Klein v. New York Life Insurance Co.*, 104 U. S., 88, 91, 26 L. Ed., 662; *New York Life Ins. Co. v. Statham et al.*, 93 U. S., 24, 30, 31, 23 L. Ed., 789; *Pilot Life Ins. Co. v. Owen* (C. C. A.), 31 F. (2d), 862, 866. And to discharge the insured from the legal consequences· of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long-settled principles.'

"The doctrine thus announced has been consistently followed and applied by this Court, and the failure to pay premiums when due, in the absence of waiver, results in forfeiture. See *Donald v. Piedmont & A. Life Ins. Co.*, 4 S. C., 321; *Perkins v. Philadelphia Life Ins. Co.*, 93 S. C., 88, 76 S. E., 29; *Parry v. Southeastern Life Ins. Co.*, 95 S. C., 1, 78 S. E., 441; *Wood v. Southeastern Life Ins. Co.*, 107 S. C., 536, 93 S. E., 197; *Cantey v. Philadelphia Life Ins. Co.*, 166 S. C., 181, 164 S. E., 609."

See, also, *Gunter v. Philadelphia Life Insurance Company*, 130 S. C., 1, 125 S. E., 285; *Harvey, as Administrator, v. Philadelphia Life Ins. Co.*, 131 S. C., 403, 405, 127 S. E., 836; *Stubbs v. Philadelphia Life Ins. Co.*, 151 S. C., 326, 149 S. E., 2, 83 A. L. R., 830.

As was the trial Judge, in view of the long period of time which these policies had been in force, and the evident intention of respondent to keep them in force with all of their benefits intact, we have been sorely tempted to seize upon the fact that a deposit considerably in excess of the amount necessary to keep the policies in force to the extension date for the payment of premiums was demanded and collected, to declare a change in the payment of premiums from that of annual, to quarterly installments, but

260

at the threshold, we are met not only with the plain terms of the policy and the extension agreement, but with the construction placed upon the extension agreement by the respondent.

The facts in the case of *Lane v. N. Y. Life Ins. Co.,* 147 S. C., 333, 145 S. E., 196, relied upon by respondent, are so different from those of the case at bar, as to make the *Lane case* inapplicable.

While the thought may be equally as disturbing as comforting, yet only time will tell if appellant has gained any advantage in this case.

The decree and judgment appealed from is reversed, and the case remanded for entry of judgment for defendant below.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.