15718

McPHERSON v. J. E. SIRRINE & CO. *ET AL.*

(33 S. E. (2d), 501)

*Mr. W. G. Sirrine, Mr. Proctor A. Bonham,* and *Mr. E. M. Blythe,* all of Greenville, S. C., Counsel for Appellants,

*Messrs. Price & Poag,* of Greenville, S. C., Counsel for Respondent,

186

March 7, 1945.

Mr. Chief Justice Baker delivered the unanimous Opinion of the Court:

This is an action at law brought by the respondent for the recovery of money claimed to be due him as his partnership interest in the firm of J. E. Sirrine and Company following his ouster from the firm. Three items are set forth in the respondent's complaint, to wit: (1) A claim for salary; (2) a claim for respondent's share of an accrued earnings or profits fund known to the partners as "partnership investment account"; and (3) the value of respondent's interest in the capital assets of the partnership.

The salary claim arises out of a somewhat informal but definitely recognized agreement among the partners under which salaries were alloted to each. The status of the "partnership investment account," the percentage of the partnership capital account owned by each partner, and the valuation of the capital assets of the partnership for the purposes of settling with a partner who leaves the firm, were matters of formal contractual stipulation.

The respondent claims that he was improperly and unlawfully ousted from the partnership, and brings his action against the other partners on the partnership contract and on alleged complementary interpretive stipulations which he undertook to establish by parol testimony.

In the progress of the trial of the cause the questions between the litigants respecting the respondent's salary claim and his claim to a stated amount as his share of the partner-

ship investment account were eliminated from the case by the stated position of the appellants that they would not further contest the payment of these two items in the amounts claimed. Thus the controversy as it reaches us relates exclusively to the differences between the parties respecting the amount to which the respondent is entitled as his share of the partnership capital assets.

At the times in question in this case the firm of J. E. Sirrine and Company consisted of thirteen partners, of whom the respondent was one. The action was brought by the respondent against the partnership, and against the twelve partners other than the respondent, on the law side of the Court, and was tried before the Court and a jury, resulting in the rendition of a verdict in favor of the respondent for the full amount claimed by him.

The complaint sets forth a cause of action on contract. After setting forth the present composition of the partnership it alleges that the sum of $220,000.00 "was the fixed value" of the partnership assets, and that the respondent's interest in said partnership "was definite and fixed at eighteen percent." It charges that in November, 1943, while the respondent was absent on business in Washington, D. C., the appellants "without just cause or reason, agreed among themselves to oust plaintiff as a partner and without any just cause, reason or excuse, demanded plaintiff's withdrawal from the firm and forthwith informed plaintiff that he was no longer a member of the firm, but that his salary would be paid and his interest in the profits of the business would be allowed to accumulate up until January 1, 1944."

It is further alleged in the complaint that prior to the aforesaid action of the appellants the respondent had not been given any intimation of any charges against him, and was not given any hearing on the alleged charges; that the respondent's first knowledge of the action of the partners came in a conversation with J. E. Sirrine, on or about No-

vember 6, 1943; that following a protest by respondent to Mr. Sirrine the appellants revoked their former action and made the effective date of respondent's forced withdrawal from the firm as of November 10, 1943, and ordered respondent's immediate dismissal from the firm.

Aside from the allegations respecting the salary item and the "partnership investment account" item, the complaint then proceeds to set forth the respondent's claim as constituting eighteen per cent. of the $220,000.00 valuation of the partnership capital assets, to wit, the sum of $39,600. The prayer for relief is for judgment against the appellants for the aggregate of the three items above referred to.

No reference is made in the complaint to any formal partnership agreement governing the rights of the partners in respect to any of the matters in controversy herein.

The appellants answered jointly. They admit the existence of the partnership and the membership thereof as alleged by the rspondent, and the amount of the respondent's partnership interest as eighteen percent of the total partnership assets. Then set forth that the relationship between the parties was contractual "and wholly in writing." They allege that they "offered to pay the plaintiff more than is due him, but he has refused to abide by the terms of his agreement." They allege that the amount due the respondent as his share of the partnership assets is $7,920.00 instead of $39,-600.00 claimed by the respondent. And they set forth the contractual stipulations between the parties on which their calculation of the amount is based.

In addition to stating the pertinent details respecting successive contracts relating to the rights and interests of the partners that were made since the beginning of the partnership in 1921, and which are referred to in the statement of facts *infra,* the answer proceeds to state the pertinent terms of the final partnership contract which was in effect at the time of the ouster of the respondent and under the terms of

which, according to the appellants, the amount to which the respondent was entitled at the time of his ouster was "one-fifth of the amount his estate would have received in the case of his death * * *"; that in the event of the respondent's death his estate would have been entitled to eighteen per cent. of $220,000.00, and that therefore, under the express provisions of the contract, the respondent was entitled to receive one-fifth of eighteen per cent. of $220,000-.00, to wit, $7,920.00.

The answer further sets forth that the partnership agreement contains a provision, hereinafter more fully referred to, empowering the partners to effect the withdrawal of any partner, and the appellants allege that "after full and careful consideration all members of the firm (with the exception of the respondent) reached the definite conclusion that it would be for the best interest of the partnership that the plaintiff should no longer be a member thereof". And they set forth that in adopting this course, and notifying the respondent thereof, they acted under an express provision of the partnership contract reading as follows:

"The right to terminate the interest of any one of the partners is hereby vested in the other partners for any cause which in their discretion seems to be reasonable, and the interests set forth hereinafter are accepted with this express condition and limitation."

It is then alleged that the respondent declined to accept the terms of the agreement covering the involuntary withdrawal of a partner, "whereupon all of the remaining members unanimously exercised the power given by the written agreement and modifications and terminated the plaintiff's membership as of November 10th, 1943."

The answer then admits that the appellants are required to pay the respondent the sum of $7,920.00, representing one-

fifth of eighteen per cent. of the agreed value of $220,000-.00 and consents to the entry of judgment for that amount.

Annexed to the answer and by the terms thereof made exhibits, are the successive contracts of partnership and supplementary written agreements made between the parties.

From the foregoing it is perceived that on this appeal the ultimate question between the litigants is whether the respondent is entitled to $39,600.00, representing eighteen per cent. of the agreed valuation of the partnership capital assets of $220,000.00, or $7,920.00, representing one-fifth of eighteen per cent. of $220,000.00.

The last complete partnership agreement was made under date of September 17, 1937. The several provisions of this agreement upon which the appellants rely, with such additional matter as is necessary for a full understanding of the case, are as follows:

"I. The plans and good will of the business shall be held by all of the partners, or such of them as, subject to the terms and conditions of this agreement and future agreements, shall continue to be identified with the business. In the event any of the partners should leave the business by death, withdrawal or otherwise, any right, title or interest possessed by him shall absolutely cease and determine. The right to terminate the interest of any one of the partners is hereby vested in the other partners for any cause which in their discretion seems to be reasonable, and the interests set forth hereinafter are accepted with this express condition and limitation. In the determination of any question among the partners a majority in the amount of the several percentages of interest shall govern and not the majority of individuals composing the partnership. This shall apply at all partnership meetings.

"II. (Here are given the percentages according to which the earnings of the company are to be divided. The per-

centage of the respondent is fixed at 12% , but by subsequent arrangements this was increased to 18%.)·

"III. Any of the partners may voluntarily withdraw at any time, or his withdrawal may be otherwise effected by a vote of a majority of all the interests and thereupon the interest of such withdrawing partner shall be as follows:

" '(a) The value of the business, plans and good will is fixed at $220,000.00, and in case of the death of any partner, the value of his interest shall be computed on this basis; that is to say, his estate shall be entitled to receive his percentage of $220,000, payable within a reasonable time.

" '(b) Any partner who hereafter voluntarily withdraws shall thereby waive and relinquish all his interest in the business and all its assets, and he shall not receive any payment or compensation of any kind, except his proportionate share of the undistributed net earnings, if any, which have accumulated to the date of his withdrawal. If any partner, not voluntarily withdrawing, shall be deprived of his interest by the vote of the other partners under the provisions of the agreement, he shall accept in full payment and satisfaction of his interest one-fifth of the amount his estate would have received in the case of his death, plus his proportionate share of the undistributed net earnings, if any, which have accumulated to the date of his withdrawal and which stand to his credit on the books.'

"VI. If any partner withdraws for any cause, his interest shall automatically revert to the whole business, so that all the partners shall share in the same in proportion to their respective holdings, and such interests shall be held in the business until redistributed or reassigned by a vote of a majority in interest.

"VIII. Meetings may be held at any time and action taken at any meeting where a majority of all interests is represented, and such action shall bind all partners to this agreement; provided, however, that no meeting shall be

held for the purpose of increasing the holdings of any partner or adding new ones, unless notice be given to each partner and at least seventy-five per cent of the interests are represented at the meeting. No partner's holdings may be reduced without his consent except as provided for complete termination.

"IX. Any question arising, not covered by this agreement, shall be adjusted in fairness to all concerned by the majority in interest.

"XI. The intent of this agreement is to insure the continuation of the name and purpose of the organization, is for the benefit of the partners and their heirs, and to insure for them or their estates a fair proportional paticipation in the assets and good will of the organization."

The theory of the respondent's case is that his ouster constituted a violation of the terms of the partnership contract; that the partners had no just or reasonable cause to oust him; that the right to terminate his interest in the partnership was conditioned upon the holding of a meeting of the partners at which he would be given an opportunity to hear and answer the charges made against him; that his ouster, without a just or reasonable cause and without a hearing, entitles him to the payment of his full interest in the partnership assets (based on the agreed valuation of the same and his agreed percentage of interest therein) without respect to the limitation in the partnership contract respecting settlement with partners who involuntarily withdraw.

The appellants on the other hand contend in substance that under the contractual stipulations above quoted, and especially under the facts and circumstances of this case, their unanimous determination that the respondent be ousted from the partnership is not open to judicial inquiry or review in an action at law upon the contract; that it is only necessary for them to express the conclusion that in the exercise of their discretion, for causes deemed by them

to be reasonable and sufficient, the respondent should not longer remain a partner. They recognize that a partner could not be removed arbitrarily or capriciously, but contend that under the facts of this case (an action on contract) this limitation on the powers of the partners is irrelevant.

For a proper understanding of the controversy the following background of the partnership relationship needs to be stated:

The firm of J. E. Sirrine and Company is a partnership in Greenville, S. C., engaged in the business of engineering. The partnership was formed in 1921. The respondent was one of eleven members of the partnership at the time of its formation. There were many changes in the personnel of the partnership in the intervening years, but the respondent continued as a member, with various agreed changes in the extent of his partnership interest, until his ouster in November, 1943.

Prior to the formation of the partnership in 1921 the business was owned and operated solely by appellant J. E. Sirrine. Among the persons in his employ at that time was the respondent, who had been associated with Mr. Sirrine for approximately nineteen years, starting at the bottom of the ladder and developing himself by his attention to the business and his education and experience as an engineer until he had become an important factor in Mr. Sirrine's organization.

In 1921 or earlier the respondent had concluded that the time had arrived for him to get into the engineering business on his own account, and he informed Mr. Sirrine of this purpose, and of his intention to start his own business unless Mr. Sirrine was prepared to take him into the business as a partner. As the result of discussions thus initiated, Mr. Sirrine formed the partnership above referred to.

In the original partnership agreement, executed under date of June 25, 1921, no stated value was placed upon the

assets of the partnership. These assets were expressed to include "the plant, equipment and good will" of the business. The assets of the firm were conveyed to the partners "to be held in trust by such of them as, subject to the terms and conditions of this agreement and future agreements shall continue to .be identified with the business." In this agreement the provisions regulating the withdrawal of the partners are to the effect that any. of the partners may withdraw at any time, or their withdrawal may be effected by a vote of a majority in interest of the partners, whereupon the withdrawing partner shall be entitled to "two and one-half times the average annual sum that his interest exclusive of his salary would have earned for the five previous calendar' years." In case of death, the estate of the deceased partner shall be entitled to twice this sum.

In other material aspects the original partnership agreement does not differ from the 1937 agreement hereinabove quoted.

The provision governing the withdrawal of the members was found by experience to be unjust to the partnership as applied to members voluntarily withdrawing from the firm. For this and possibly other reasons an arbitrary valuation of $220,000.00 was placed upon the assets of the partnership by the 1937 contract and the rights of the members withdrawing from the partnership were rearranged with the result that upon the death of a partner his estate receives the full amount of his percentage of the agreed valuation of the partnership assets; in the event of his voluntary withdrawal, he receives no compensation at all for his interest in the partnership assets (except his proportionate share of the undistributed net earnings contained in the "partnership investment account", and the accrued amount of the salary alloted to him).

And as above set forth any party "not voluntarily withdrawing"; in other words, any partner ousted from the

partnership, is deprived of his interests in the partnership assets, with the exceptions above noted, and "he shall accept in full payment and satisfaction of his interest one-fifth of the amount his estate would have received in the case of his death".

As far as the written agreements between the parties go, it was upon this contractual situation, subject to supplementary agreements resulting in changes in the agreed salaries of the partners and the increase of the respondent's partnership interest to eighteen per cent., that the ouster of the respondent occurred in November, 1943.

The circumstances of this ouster, so far as material here, are these:

Throughout the life of the partnership Mr. Sirrine was recognized, as he was in fact and by contract, as the senior partner. He had the largest interest in the firm, and his seniority and methods of operation resulted in his being recognized as the dominant influence in the firm. Next in seniority, both under the terms of contract and also by reason of the extent of his interest in the firm, was the respondent. After the respondent the next partner in seniority was Mr. A. S. Bedell who like the respondent was one of the members of the firm from the time of its organization. His interest in the partnership at the time of the ouster of the respondent was 11.25%.

Up to February, 1943, there was apparently complete harmony among the members of the firm. There are intimations in the testimony that there might have been some slight feeling among the partners arising out of the fact that the respondent has indicated a desire and purpose to get his two sons admitted into the firm as partners. Mr. Sirrine had not approved of this, but the matter had never been formally presented to the partners, and the subject was at least temporarily eliminated from consideration by Mr.

Sirrine and by the other partners by the fact that both of the respondent's sons were in the naval service.

A day or so prior to the meeting of the partners in February, 1943, the respondent told several of the partners that he was greatly dissatisfied with the department of the firm of which Mr. Bedell was the head. This department may be described as the promotion department. Its functions had to do with obtaining new business.. Matters of advertising, travel, and soliciting and developing business for the firm were under the direction of Mr. Bedell. It was the position of respondent, as stated by him to the members of the firm to whom he talked informally before the meeting, that Mr. Bedell's department was not producing results commensurate with the expenditures of that department and he expressed the feeling that the matter should be fully aired at the forthcoming meeting of the partnership.

The reaction of the partners thus approached is the subject of conflicting testimony. None of them, however, testified that they disapproved of the criticism thus expressed by respondent. Apparently the reaction they intended to express, taking their testimony at face value, is that if the respondent desired to make the charges, that was a matter entirely up to him. The respondent testified that certain of the partners encouraged him in the purpose he expressed.

On the date of the partnership meeting, shortly before the meeting, the respondent informed Mr. Bedell himself of his intention to bring the matter up at the partnership meeting.

In the course of the meeting the respondent read a paper in which he preferred his charges against Mr. Bedell. The paper as read was entitled: "To be presented for discussion."

The statement thus presented to the meeting contained, among other criticisms, complaints that the respondent and other partners were ignored in the making of decisions and establishment of policies; that Bedell had been assuming

the direction of work which was not within his province; that Bedell had acquired an interest in the partnership and a salary which in respondent's opinion were not warranted either by his ability or by the service rendered by him; that the cost was excessive; that respondent's "prime interest in entering into the partnership was to give my sons and the sons of the other partners an opportunity to perpetuate it by carrying on its work"; and that rank outsiders were brought into the firm and given preference over the sons of members and other competent employees.

The matter was discussed among the partners, following which Mr. Bedell asked for a vote of confidence. This was given by all of the partners other than the respondent. Whereupon the respondent shook hands with Mr. Bedell and in effect expressed the hope that no personal feeling would result from the incident.

There is conflict in the testimony as to the statements made by the respondent respecting his own situation. It is clear, however, that he indicated his readiness to resign, if that was desired, and that no action to invite his resignation or to indicate a general desire to have the same presented was expressed or indicated.

Subject to the qualifications stated below, it appears that following the Bedell incident the partnership continued on in its normal course, without any apparent dissension or lack of harmony among the partners in the conduct of their respective departments of the business.

In April, 1943, the Smaller War Plants Corporation, a branch of one of the Federal war agencies, desired to borrow one of the members of the firm for work in Washington. The job was one of the so-called "dollar-a-year" jobs. It was stated that a "top man" in the firm was desired. Apparently the matter was brought to the attention of the partners through Mr. Bedell and Mr. Sirrine, and as the result of informal discussions among some of the partners,

under the apparent direction of Mr. Sirrine, the respondent was invited to take the government assignment with the understanding that he could go to Washington to perform his duties there and continue to draw his salary and continue to receive his contractual partnership interest in the earnings of the firm.

The respondent accepted the suggestion thus made to him and entered upon the performance of his duties. The record leaves no doubt that the services performed for the government by the respondent were eminently satisfactory and reflected credit on him and on the firm. While performing these services he returned to Greenville about once every two weeks, and participated in partnership meetings and in attention to partnership affairs while in Greenville on these periodic trips.

Some time in October, 1943, it was realized that the work of the respondent in Washington was drawing to a close and that he would be returning to Greenville to resume his accustomed place in the partnership councils and operations. During that month or in the very early part of November following there were discussions among the partners as to the desirability of continuing the respondent in the firm. The respondent was not aware of these discussions. No intimation had come to him that there was any dissatisfaction with his partnership status or his services to the partnership, or that he had become *persona non grata*.

As a result of the informal discussions among the partners, Mr. Sirrine on November 6, 1943, at which time the respondent had returned to Greenville to resume his work there, though subject to recall to Washington, told the respondent of the attitude of the partners and of their conclusion that he should withdraw from the firm. It was suggested to him that he would be paid his agreed salary to January 1, 1944, his proportionate share in the undistributed earnings of the partnership, and the share of the partnership

capital assets which under the contract is payable to a partner who withdraws involuntarily, that is to say, one-fifth of his eighteen per cent. of the agreed valuation of the partnership assets.

There is a conflict in the testimony at this point, but taking the situation in the light most favorable to the appellants, the respondent did not at first express any resentment against or opposition to the position stated by Mr. Sirrine. On the other hand, it is claimed that he indicated that he intended to withdraw from the firm anyway, to go in business on his own account with his two sons when they returned from the service.

Shortly thereafter the respondent demanded that he be presented with a formal request for his withdrawal from the firm and that the reasons for the action of the partners be given him. Thereupon such a request, signed by all of the partners other than the respondent, was presented to the respondent but the reasons for the action of the partners were not stated.

In explaining on the witness stand the reasons for their action, the partners related in varying terms a consensus of opinion that as the result of the Bedell incident the life of the partnership was threatened unless the respondent withdrew; that the paper read by the respondent at the February meeting was not only offensive in tone both to Mr. Bedell and to the other partners, but that the manner in which it was presented accentuated an apparent attitude of hostility on the part of the respondent that rendered it impossible for the partners to continue their association with the business under the seniority of the respondent; that it was their understanding of the partnership contract that they had the right to oust a partner without a hearing and without notice or the presentation of any charges, for any cause which they deemed reasonable (if it was in fact reasonable), and that in their opinion it was a reasonable cause for the

ouster of the respondent that by his action in the Bedell in-
cident he had created a situation which imperiled the con-
tinuation of the partnership association.

Contrary to the views of the other appellants, Mr. Sirrine
expressed on the stand the opinion that under the partner-
ship contract the respondent was entitled to a hearing if
he wanted one, but that since he did not ask for a hearing,
he had waived the matter and had no cause of complaint
on that score.

Other complaints expressed by the partners which they
stated entered into their conclusions but which apparently
they did not consider as the moving grounds for the ouster
of the respondent were the fact that in recent years the re-
spondent (about sixty-four years old) had slowed up in
his work; the fact that he seemed determined to press the
matter of having his sons admitted into the firm as partners,
regardless of the wishes of the other partners; that he de-
voted to matters outside of the partnership time which
should have been given to the partnership affairs; and that
illness had kept him away from his duties at times.

On these additional matters of complaint, however, not
only is the testimony conflicting, but in justice to the re-
spondent it must be said that on most of these issues, if they
were pertinent to the problems confronting us, the posi-
tion of the appellants has very little merit.

Much of the record is taken up with testimony on the
question whether, at the time of the making of the original
partnership contract in 1921 and thereafter there was dis-
cussion or agreement as to what is meant by the provision
of the successive contracts that the interest of a partner
may be terminated by the other partners "for any cause
which in their discretion seems to be reasonable." The re-
spondent testified, over vigorous objection, that before the
original partnership contract was signed and also in the
course of discussions respecting the late agreements, the

clause relating to ouster of a partner was defined as limiting the power of the partners to oust one of their number to causes which tended to reflect discredit upon the partner, such as drunkenness, dishonesty, incompetence, and the like. And the position of the respondent in effect is that such discussions must be taken to limit the contractual language or they must be regarded as creating a supplemental agreement not in conflict with the written agreement and running parallel with it.

The appellants, reserving their objections to the respondent's testimony on this subject, denied that there were any discussions or agreements of the character set up by the respondent.

At the close of the presentation of the respondent's case, which consisted in the main of the testimony of only the respondent, the appellants moved for a direction of verdict against themselves and in favor of the respondent for $7,-920.00, representing one-fifth of eighteen per cent. of $220,-000.00. The ground of the motion was that by the express terms of the partnership contract the only provision covering the rights of the respondent is that which provides that in the event of the involuntary withdrawal of a partner, as the result of the action of the co-partners, he shall accept one-fifth of the amount his estate would have received in the event of his death, and that is the amount for which the appellants sought the entry of a directed verdict against themselves.

The motion was refused by the trial Judge on the ground that since the contract is silent as to the manner of settlement with a partner who is unjustly expelled from the partnership, such a situation is not embraced by the contract. That in consequence, it is for the jury to determine whether the respondent was unjustly ousted, and if he was, his interest would not be controlled by the partnership agreement, but would be the actual amount of his interest, presumably sub-

ject to the limitation of $220,000.00 as the valuation of all the partnership capital assets.

At the close of the testimony for the appellants, a motion for a direction of verdict in favor of the plaintiff for $7,920.00 was again made on the same grounds involved in the original motion. Additional grounds of the motion were that the appellants, in ousting the respondent, acted in accordance with the right given them by the express terms of the contract, and that under the terms of the contract a majority in interest of the partners had the right to cause the involuntary withdrawal of any partner for any cause which in their discretion seemed to them to be reasonable; and it was contended that the "testimony is susceptible of no other reasonable inference than that plaintiff's involuntary withdrawal resulted from causes which in their discretion seemed to be reasonable."

This motion likewise was refused.

The case then went to the jury on instructions which in the main submitted the question whether under the circumstances disclosed by the testimony the appellants had "reasonable cause" to warrant them in ousting the respondent, and whether the "discretion" exercised by the appellants was properly exercised. The trial Judge specifically charged that the appellants are not the sole judge "as to whether or not they acted with discretion upon a reasonable cause, because if they did not act in that manner, a Court has a right to review their action * * *." He further charged that "the only limitation" (that is to say, that there is a legally implied limitation) on the contractual provision in question, is to the effect that a partner may not be removed arbitrarily or capriciously, and that the respondent had the burden of proving such action on the part of the appellants. He also charged:

"The jury should place itself in the position of the partners at the time they acted, and say whether or not men

of ordinary reason and prudence would have acted as they did under the circumstances."

The jury brought in a verdict for the amount of the admitted items of salary and undistributed profits, and for the full amount of the plaintiff's claim to eighteen per cent. of the agreed value of the practical assets of the partnership, to wit, the sum of $39,600.00.

In the course of the trial numerous questions arose as to the admissibility of testimony. But in the view we take of the case it is unnecessary to deal with those questions. We find that the disposition of the case is controlled by the express terms of the contract and by the application of such terms to the admitted fact that the respondent was ousted from the partnership by the vote of all of the other partners on grounds, as stated by them, which in their opinion disrupted the partnership, and tended to impair the continuation of the partnership status.

As we have observed above, the respondent's action is grounded upon the partnership contract. The salary item, the item arising out of the partnership investment account, and the valuation of the partnership assets adopted by the respondent were all matter resting on a contractual basis which the respondent by his complaint and in his testimony fully recognized. The same contract which fixed the valuation of the partnership assets and the extent of the interest of the respondent therein provided for the withdrawal of members, (1) by voluntary withdrawal; (2) by withdrawal brought about involuntarily by the action of the remaining partners; (3) by the death of a partner.

In dealing with involuntary withdrawals, the contract contains no differentiating provisions for cases of ouster that are not contested and those that are contested, or for cases where the ouster is deemed by the ousted partner to be justifiable and those which are deemed by him to be unjustifiable.

The language of the contract in this regard is all-embracing. To hold that the contract does not cover the case of an involuntary withdrawal that is contested on the ground that the action of the partners was unwarranted is to interpolate into the contract a provision that the ouster there provided for is an ouster which is acceptable to the ousted partner, and that it shall not apply to a case in which the ouster is alleged to be improper and is found by a Court and jury to be legally unjustified.. Such an interpolation clearly is to add new provisions to the contract, and to emasculate its purposes as applied to the facts of this case.

The elementary legal principles applicable in this situation are thus stated in 17 C. J. S., Contracts, § 296, pp. 698-702:

"In construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four conrners of the instrument, and when such contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed. Hence words cannot be read into a contract which import an intent wholly unexpressed when the contract was executed. Where the contract evidences care in its preparation, it will be presumed that its words were employed deliberately and with intention."

As we have hereinbefore stated, the action is founded on the partnership contract and of course, when it is found that the language of the contract covers the matter in controversy, the issue is decided by merely applying the language of the contract to the facts. Here, the respondent says that under the contract the valuation of the assets of the firm is fixed at $220,000.00; that under the contract his interest in these assets is eighteen per cent. of

the total; that under the contract as he interpreted it and as he understood the other partners interpreted it, he could not be ousted except at a meeting of the partners called upon due notice, at which he was afforded an opportunity to be heard; and that he having been ousted without compliance with these prerequisites, and without reasonable cause, he is entitled to his contractual percentage of the contractual valuation of the partnership assets. These contentions are as above stated disposed of when it is recognized that the respondent, "not voluntarily withdrawing," was "deprived of his interest by the vote of the other partners under the provisions of the agreement * * *." Having been ousted, he is required by the terms of the contract to "accept in full payment and satisfaction of his interest one-fifth of the amount his estate would have received in the case of his death * * *."

The further contentions of the respondent to the effect that the subjection of an ousted partner to the recovery of only one-fifth of his interest in the partnership capital assets is harsh, oppressive, and confiscatory would of course be material if the partnership contract were susceptible of more than one interpretation, so as to enable the Court to adopt an interpretation that would avoid such consequences, but such is not the case. The contractual verbiage embraces the subject under discussion and involves no ambiguity in either purpose or respect. In almost every case of an involuntary ouster there would be the elements of a controversy. The contract plainly contemplates this. The provisions of the contract requiring a majority in interest of the partners to act on questions arising in the conduct of the partnership, requiring notice to be given, and an affirmative vote of seventy-five per cent. in interest of the partners, to effect a change in the interests of the partners by adding new partners or increasing the holdings of any partner, and prohibiting the reduction of a partner's holdings

without his consent "except as provided for complete termination", all point to the conclusion that controversial situations such as are involved in the present case were intended to be encompassed within the contractual language.

Even if respondent's construction of the contract in ██ this case as inflicting a forfeiture upon him were adopted, that fact alone would not require or permit this Court to adopt a strained construction of the contract that would defeat the clearly expressed intention of the parties. As stated in 17 C. J. S., Contracts, § 320, pp. 742, 743, citing *Smith v. Equitable Life Assurance Society of United States,* 187 S. C., 251, 196 S. E., 879:

"* * * nor does the court's abhorrence of forfeitures permit it to substitute a contract for the one entered into or to make another contract for the parties after a forfeiture has been declared in the manner prescribed by the contract."

The guiding legal principles that render the applicable ██ provision of the contract in this case binding upon the respondent, without regard to any hardship or injustice or oppression that it is claimed resulted therefrom, are thus stated in 17 C. J. S., Contracts, § 296, pp. 702-707:

"It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, and, in the absence of any ground for denying enforcement, to enforcing or giving effect to the contract as made, that is, to enforce or give effect to the contract as made without regard to its wisdom or folly, to the apparent unreasonableness of the terms, or to the fact that the rights of the parties are not carefully guarded, as the court cannot supply material stipulations or read into the contract words which it does not contain so as to change the meaning of words contained in the contract."

As stated in 12 Am. Jur., 928:

"Parties *sui juris* bind themselves by their lawful contracts, and Courts cannot alter them because they work a hardship. The rights of the parties must be measured by the contract which they themselves made."

The view of the situation above set forth is accentuated when recourse is had to the fundamental fact that the partnership agreement does not fix any definite time for the termination of the partnership status, but leaves the time element to be governed by contingencies such as the one that arose in the present case. Under such circumstances, the partnership is for all practical purposes a partnership at will, subject to dissolution by the act of one or more of the partners at any time. See 40 Am. Jur., 292, 293.

It will of course be observed that a controlling consideration in this case is the fact, repeatedly stated above, that the suit is on the contract, and treats the ouster of the respondent as an accomplished and accepted fact. We are not concerned with the question whether the respondent, under the circumstances disclosed by the testimony, could have repudiated the contract on the alleged ground of the rejection and repudiation of the same by the appellants, and whether in such event a suit in equity would have been maintainable for the actual value and amount of the respondent's interest in the partnership capital assets. In such a suit, if the same were found to be maintainable, it might have been concluded that the actual value of the partnership capital assets was vastly more than $220,000 (as some of the testimony brought out by the respondent intimated) and it might have been shown and contended that the ouster of the respondent was capricious, arbitrary, or (as intimated by plaintiff's counsel in the record) grounded upon the fact that under the partnership contract the ouster of the respondent enured to the benefit of the other partners

by vesting in them an interest in the portion of the partnership assets of which the respondent was divested.

Or it may be that the respondent can bring an action for damages against the appellants individually and not as partners for damages for wrongful ouster, in which it might be alleged that by reason of their unlawful action he had been compelled to accept in satisfaction of his partnership interest a sum (stipulated in the contract) much less than the actual value of his interest in the partnership. Such an action would be in the nature of an action for conspiracy, and the conspiracy might be alleged to be founded on the beneficial consequences to the other partners that followed the ouster of the respondent.

We express no opinion as to whether such suits were or are open to the respondent or whether in such suits the considerations stated could be relied upon. We refer to suits of that character to show by contrast the difference between a suit under the contract for the rights of the respondent as defined therein, and a suit which is not founded on the contract, but is based solely upon the common law rights of a partner who has been wrongfully ousted from the firm.

While the respondent has in the present litigation and prior thereto questioned the legality and propriety of his ouster, he has nevertheless accepted the same as a *fait accompli,* whether accomplished rightfully or wrongfully and his cause of action is not for his wrongful discharge and the pecuniary losses resulting therefrom, but is a case clearly within the contemplation of the explicit language of the contract.

This view of the matter of course renders it wholly immaterial whether the cause for which the respondent was ousted was a reasonable cause, or whether the action of the partners represented a lawful and honest exercise of their discretion. It is conclusive, as already stated herein, that the ouster of the respondent was involuntary; that it

was carried into effect; and that in such event the contract calls for the payment to the respondent of the stipulated amount as to be found as hereinbefore set forth.

The aforestated views render irrelevant, in this action on the contract, the contentions of the respondent that reading the contract as a whole, it appears to have been contemplated that the interest of each partner was to be considered a life-time interest that would pass to his heirs; that the language of the contract as to the manner in which and the causes for which a partner may be ousted, and the procedure for ouster, is ambiguous or incomplete; that the ouster was in fact without reasonable cause, and was not the exercise by the appellants of a sound or legal discretion; and that the ouster was effected without due process of law.

The views expressed above render it unnecessary to deal with the exceptions on the subject of the admiss-ibility of testimony and with various phases of the charge of the trial Judge on the subject of the construc-tion and meaning of the pertinent provisions of the partner-ship contract. Our holding that the respondent is entitled to recover in this action in accordance with the precise terms of the contract renders all such matters immaterial. The trial Judge should have granted the motion for a direction of verdict, at the close of the plaintiff's case, on the basis of the terms of the contract, and having refused such mo-tion, he should have granted the motion for a direction of verdict made at the close of the whole case.

The judgment is reversed and the case is remanded with directions that judgment be entered up in favor of the re-spondent and against the appellants for $7,920.00 as the part of the partnership capital assets to which the respondent is entitled under the contract, together with the additional sums admitted by the appellants to be payable by them.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAY-LOR and OXNER concur.

On Petition for Rehearing

PER CURIAM.

The respondent has petitioned for a rehearing. The grounds of the petition appear to us merely to reiterate in different language the contentions of respondent's counsel that were ably presented in their brief and oral argument in the argument of the case in the first instance. But in view of the importance of the main issue to the respondent, and of the feeling of respondent's counsel that the language in which a portion of the opinion of the Court is framed has a tendency to reflect upon their judgment in prosecuting this case, we will comment briefly on our reasons (in addition to the fact that no new matter is presented) why we refuse the petition.

The portion of the opinion of the Court in which it is pointed out that the considerations which we found controlling in 'this case arose out of the contractual nature of the action, and might not have been controlling if a suit in equity had been brought on the theory of the rejection and repudiation of the contract by the appellants, or against the partners as individuals for damages for wrongful ouster, had reference as stated in the opinion to the Court's purpose "to show by contrast the difference between a suit under the contract for rights of the respondent as defined therein, and a suit which is not founded on the contract * ** *." It was expressly stated that the Court intimated no opinion as to whether suits of the character described would have been or are open to the respondent. We merely sought to emphasize our conclusion that in a suit on a contract, for the sums of money therein contracted to be paid, full effect must be given to the language of the contract; and we found that the language of the present contract covered the facts adduced, leaving us with no alternative but to apply the contract to the facts.

When respondent's counsel argue that the partners could not become liable in damages to the respondent in their individual capacities because "they acted in pursuance of lawful. contract rights," they are giving expression to the view that in this case the question at issue is covered by the contract. That conclusion, with a statement of our interpretation of the contract, is the foundation of our opinion.

In no event may the comments in the opinion of this Court reasonably be regarded as a reflection on the judgment of respondent's counsel in pursuing the course they did in the present case, rather than instituting some other kind of action. Whatever other or additional course might have been or may be open to them (as to which we make no intimations), the results which flowed from their able presentation of the present case leave no foundation for any possible criticism of the course pursued by them. They sued for three items claimed under the partnership agreement, to wit, the salary item; respondent's portion of the partnership investment account, and the respondent's stipulated share of the partnership assets. On the first two items they recovered the full amounts claimed. On the third they recovered the full amount which under our construction of the contract was payable.

We might add that in our opinion the case of *Moore v. Postal Telegraph-Cable Co.*, 202 S. C., 225, 24 S. E. (2d), 361, cited by respondent's counsel in support of their position that we may have misapprehended the provisions of the contract relating to the termination of the interest of a partner, is an interesting application of the precise rule upon which the opinion of the Court in the present case is based. The cited case holds that where the contractual language fits the facts of the instant case, it must be applied and that in such a case the power reserved to a contracting party to determine a factual issue cannot be exercised to render the contractual language inapplicable.

The argument that we overlooked the admission of the appellants themselves that the respondent was entitled to recover upon a showing that the action of the appellants was arbitrary or capricious overlooks the basic principle of the ruling of the Court, to wit: It is wholly immaterial whether the action of the appellants was a reasonable exercise of their discretion, or whether it was arbitrary or capricious, because (1) the respondent was in fact ousted from the partnership; (2) because of the ouster he sued on the contract for the moneys which he deemed payable to him under the contract and under the supplementary oral interpretations thereof upon which he relied; and (3) we found in the contract express language which in our opinion precisely encompassed the facts of the present case.

The seventh ground of respondent's motion is to the effect that a contract need not deal with the damages which shall flow from a breach thereof and that we overlooked the rule that it is only when parties expressly contract for liquidated damages that the contract is binding as to the amount of recovery for a breach. But in this case the contract does provide the amounts that shall be payable in the contingency with which we are dealing. This was not a suit for damages for breach of contract; it was a suit for specific sums of money contracted to be paid. And the provisions for the payment of these sums excluded the theory of damages independently of the provisions of the contract. For all practical purposes they amounted to stipulations for the payment of liquidated damages in a specified amount upon the happening of the contingency covered by the contract and involved in the present case.

It is fallacious to contend, as is done in the petition for rehearing, that the respondent was entitled to recover damages as for a breach of the contract. Whatever interpretation may be placed upon the contract the suit was for the sums therein stipulated to be paid.

Petition refused.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUS-TICES FISHBURNE, STUKES, TAYLOR and OXNER concur.