2412

Michael Preston EBERT, Appellant v. Ann Hill EBERT (Now Anders), Respondent.

(465 S.E. (2d) 121)

Court of Appeals

*Kermit S. King* and *Rochelle Y. Williamson, King & Vernon,* Columbia, *for appellant.*

*James T. McLaren* and *C. Dixon Lee, III, McLaren & Lee,* Columbia, *for respondent.*

Heard Sept. 13, 1995.

Decided Nov. 6, 1995; Reh. Den. Dec. 21, 1995.

CURETON, Judge:

Michael Preston Ebert (the husband) brought this action against his former wife Ann Hill Ebert Anders (the wife) seeking termination of periodic monthly payments under their divorce decree because of the wife's remarriage, and also an order requiring the wife to reconvey the marital home to him. The wife counterclaimed for reimbursement of amounts she spent on behalf of the parties' children and attorney fees. The family court found the award of the marital home and the $4,000 monthly payments were in the nature of a property division, not alimony, and denied the husband relief. The court granted the wife relief on her counterclaim and ordered the husband to pay her attorney's fees. The husband appeals. We affirm the trial court's findings that the transfer of the marital home, related maintenance expenses on the marital home, and the monthly payments were in the nature of equitable division. We also affirm the award of reimbursement for expenses for the children and attorney fees. We remand for the family court to establish a date by which the marital residence must be sold.

## Background

The parties married on March 3, 1968. They have two children: Michael Preston Ebert, Jr., born June 6, 1970, and Suni Ann Ebert, born July 27, 1972. After twenty-two years of marriage, they divorced in January 1990.

The issues in this appeal arise out of a settlement agreement the parties reached in November 1989, which was merged into a family court order in December 1989. The agreement purported to settle all financial and property issues between the parties, leaving only the issue of divorce open. There was no appeal of this order.

In pertinent part, the agreement provides:

> 1. *CHILD CUSTODY.* Michael Preston Ebert, Jr. is above the age of 18. It is stipulated that Wife shall be the custodial parent of Suni Ann Ebert until her 18th birthday on July 27, 1990. However, Husband shall not be re-

quired to pay child support for Suni to Wife as Husband is supporting Suni directly through her attendance at a private school to which he is making payments and through allowances made directly to the child.

\*　　\*　　\*　　\*　　\*　　\*

3. *CONDITIONAL WAIVER OF ALIMONY.* It is anticipated that Wife will sell the property constituting the present marital home, located at Lake Murray, and will realize from such sale liquid funds, after taxes of $850,000.00, to invest and provide for her own support without a need for alimony. Such amount is computed by applying a tax basis of not less than $200,000.00 to the contemplated net sale price after any commissions of not less than $1,279,000.00. Assuming the success of such contemplated transactions, [W]ife makes no claim to alimony against Husband. Husband makes no claim to alimony against Wife.

4. *PROVISIONS PERTAINING TO CONTEM-PLATED SALE OF MARITAL HOME.* It is Wife's announced intention to sell the lake property, consisting of about 11.47 acres and improvements. Husband shall immediately convey said property to Wife. Wife shall offer such property for sale at a price not less than $1,279,000 net of any sales commissions. Pending a sale, Husband shall be responsible for the yard maintenance of the home, the payment of property taxes thereon and the payment of insurance premiums on the improvements. He shall also have an air conditioner compressor repaired or replaced and shall pay to Wife the sum of $4,000 per month on the first day of each month beginning December 1, 1989 to terminate upon the sale of the marital residence and receipt of net proceeds of $1,279,000 to [Wife]. For the month of November, 1989, he shall make the same financial provision for her that he has made in past months. Such payments to or on behalf of Wife shall not be included in the income of Wife as alimony under IRC § 71 and shall not be deducted by Husband as alimony under § 215. It is stipulated that until January 1, 1993[,] Husband shall be the primary person in charge of obtaining a suitable buyer for the home and shall set the price (subject to the minimum net price herein). If Husband is

successful in obtaining a price in excess of $1,279,000 (after commissions, if any) Husband shall receive (a) reimbursement from such excess, but only to the extent of such excess, for the $4,000 per month he shall have paid to Wife pending such sale, and (b) 65% of any remaining excess after deducting the reimbursement of $4,000 per month, if there be any such excess, and after deducting the proportionate amount of commissions relating to the sale. The basis of the [W]ife's waiver of alimony is the expectation that she should realize net proceeds from the contemplated sale of the property of not less than $1,279,000. Husband will employ his best efforts to bring about a sale at the earliest possible time. After January 1, 1993 [W]ife shall be free to market and sell the property to whomever she chooses at whatever price she chooses.

In the event Wife ceases to utilize the property as her primary residence pending such sale, Husband may utilize it as his primary residence. In any event, Wife shall cooperate fully in the sale of the property and maintain the same in salable condition.

\*  \*  \*  \*  \*  \*

9. *OTHER OBLIGATIONS.* This Agreement contemplates that Wife shall have no obligations toward the financial support of their two children who are presently in school, it being contemplated that Husband shall relieve Wife of any such responsibility. Also, Husband shall have no further financial responsibility to Wife except as provided in this Agreement.

\*  \*  \*  \*  \*  \*

11. *COURT APPROVAL AND MERGER: SUBSEQUENT DIVORCE.* The parties stipulate that this Agreement is to be submitted to the Family Court for approval and merger in a Decree or an Order of the court as a permanent and nonmodifiable disposition of the issues resolved by the Agreement and shall be enforceable by contempt. In the event either party should seek a divorce from the bonds of matrimony, this Agreement shall be dispositive of all issues as to marital and property rights.

The court "approved, adopted and merged" the agreement into its December 1989 order. Thereafter, on January 2, 1990,

the family court issued an order granting the wife a divorce on the ground of the husband's adultery.

In August 1992, the husband filed an action seeking to terminate the $4,000 monthly payments and the marital home expense payments, claiming the payments were in the nature of alimony which the wife had forfeited by her remarriage. The husband further claimed he was entitled to an order requiring the wife to reconvey the marital home to him since the award was in the nature of support, not a property award. The husband also alleged the children were in college and both were "possessed of substantial trusts which are more than capable of providing for the costs of higher education," and requested the court order educational expenses paid from those trusts. Additionally, the husband sought attorney's fees.

The wife responded that the monthly payments were part of the property division and not subject to termination or reduction. She claimed the family court lacked jurisdiction to modify the property division. The wife also counterclaimed, alleging the husband was $5,000 in arrears in payments for maintenance and expenses on the property, was consistently late in making the $4,000 monthly payments, and had failed to reimburse her for expenses she incurred on behalf of Michael and Suni totaling $65,000. The wife also sought attorney fees.

In a September 1992 *pendente lite* order the family court denied the husband's request for a reduction or termination of the $4,000 monthly payments pending a final hearing.[1] In October 1992, the husband stopped making the payments and the wife subsequently sought an order holding him in contempt. In December 1992, the family court held the husband in contempt and ordered him to continue making the monthly payments.

## I.

The first issue we address is whether extrinsic evidence was admissible to aid in interpreting the December 1989 order. The question of when extrinsic or parol evidence may be admitted to alter, add to, amend or vary a written agreement has frequently been considered by the ap-

---

[1] The court found there existed an ambiguity concerning the $4,000.00 monthly payment.

pellate courts of this State. When considering the question of whether extrinsic or parol evidence is admissible to assist in interpreting or construing a court-approved marital agreement, this court stated in *Bogan v. Bogan*, 298 S.C. 139, 378 S.E. (2d) 606 (Ct. App. 1989):

> We thus begin our analysis of the disputed provision by pointing out that while the term is found in a divorce decree, the decree was entered by consent of the parties and incorporated their agreement. Thus, we are essentially dealing with an agreement between the parties.

*Id.* at 142, 378 S.E. (2d) at 608.

Where an agreement is clear and capable of legal construction, the court's only function is to interpret its lawful meaning and the intention of the parties as found within the agreement and give effect to it. *Id.* Where an agreement is ambiguous, the court should seek to determine the intent of the contracting parties. *Mattox v. Cassady*, 289 S.C. 57, 344 S.E. (2d) 620 (Ct. App. 1986). An ambiguous contract is one capable of being understood in more ways than one, an agreement obscure in meaning through indefiniteness of expression, or having a double meaning. *Bruce v. Blalock*, 241 S.C. 155, 127 S.E. (2d) 439 (1962); *accord Klutts Resort Realty v. Down 'Round Dev. Corp.*, 268 S.C. 80, 232 S.E. (2d) 20 (1977).

The agreement at issue had a "Marital Asset Addendum" attached which revealed the total marital estate had a value of $3,844,413. The wife was found to be entitled to approximately 35% of the marital estate or about $1,345,545. To realize this award, the parties necessarily intended that in addition to the property awarded to the wife valued at $133,357, she would receive an additional $1,212,000[2] from the marital estate. We find the parties intended to provide a method by which she could realize this amount through the sale of the marital home. We, therefore, have no difficulty in finding the transfer of the home was not in the nature of support, but instead was part of the equitable distribution scheme. Moreover, the general rule is that a court may not

---

[2] We do not know why there is a difference between this figure and the $1,279,000 figure the agreement states the wife expects to receive from the sale of the marital residence.

order the transfer of property to satisfy a support obligation. *Hendricks v. Hendricks*, 285 S.C. 591, 330 S.E. (2d) 553 (Ct. App. 1985). Additionally, even if considered an alimony award, it could only have been a lump sum award and "not terminable or modifiable based on remarriage or changed circumstances." *See* S.C. Code Ann. § 20-3-130(B)(2) (Supp. 1994).

The problem presented in this case is that the parties' plan for the wife to realize her share of the distribution has not worked in practice, inasmuch as the agreement does not provide a date by which the wife must realize the remainder of her equitable distribution award from the sale of the marital home. The order on its face permits the wife to have use of the home and at the same time receive the periodic monthly payments from the husband without any limitation as to length of time. Additionally, the agreement places the wife under no legal obligation after January 1, 1993 to sell the property within any time frame or for any specific amount. This situation could lead to the result that the wife may not sell the home for an unreasonably extended period, during which time the husband would be required to continue making the monthly payments. This arrangement does not serve the strong policy favoring final severance of all financial ties between the parties. *Roe v. Roe*, 311 S.C. 471, 482, 429 S.E. (2d) 830, 837 at n. 7 (Ct. App. 1993) (the family court should attempt to sever all entangling legal relationships and to place the parties in a position to begin anew; this serves the policy of finality, that is, ending the controversy between the parties).

Clearly, under *Moseley v. Mosier*, 279 S.C. 348, 306 S.E. (2d) 624 (1983) the parties to the agreement under scrutiny ousted the family court of jurisdiction to modify all issues resolved by the agreement. Ordinarily, a court will not supply omitted terms to an agreement, and an agreement where the parties did not agree to essential terms will simply not be enforced. 17A Am. Jur. (2d) *Contracts* § 192 (1991). However, where an agreement is silent as to a particular matter and because of the nature and character of the transaction an ambiguity arises, parol evidence may be admitted in order to supply a deficiency in the language of the contract. In such instance, parol evidence is admissible not to contradict the terms of the written agreement, but to determine the intent of the parties as to that particular matter. *See U.S.*

*Leasing Corp. v. Janicare, Inc.*, 294 S.C. 312, 364 S.E. (2d) 202 (Ct. App. 1988). A court-approved divorce settlement must be viewed in accordance with principles of equity and there is implied in every such agreement a requirement of reasonableness. Where there is no time set for performance of the terms of a contract, a reasonable time is implied. 17A Am. Jur. (2d) *Contracts* § 479 (1991).

Accordingly, we remand this case to the family court to determine a reasonable date by which the wife must effect a sale of the marital home, after which the court shall order a judicial sale of the property. The proceeds of the sale shall be used to satisfy the wife's equitable distribution award and any surplus should be disposed of as agreed upon by the parties with the husband being reimbursed for the monthly periodic sums first, and thereafter, any surplus divided 65% to the husband and the remainder to the wife. In the event the home does not sell for an amount sufficient to net the amount owed the wife, we construe the parties' agreement as only affording the wife the right to apply to the court for alimony, which she has now forfeited by her remarriage.

## II.

We next address the $4,000 monthly payments. This determination is important to the husband because he claims the award is alimony and that the wife forfeited her right to the payment after her remarriage. The trial court found the award to be equitable distribution based on the following provisions in the agreement: (1) the payments made by husband to wife "are not to be considered as alimony for tax purposes"; (2) division of the proceeds from the sale of the marital residence of any sums in excess of $1,279,000, as well as a division of the capital gains tax consequences from the sale; (3) reimbursement to the husband of the payments from excess proceeds from the sale of the marital residence; and (4) no requirement on the wife to repay or to terminate the payment. The court also considered the fact that the husband did not want to pay alimony and concluded all of these considerations mandated a finding that the periodic monthly payments were intended to be in the nature of a property division. We agree.

Because we have found the agreement to be ambiguous, we

are free to consider parol evidence to discern the intentions of the parties. There was testimony that if the wife had received her equitable share of the marital estate in cash she could have invested the award and received income of approximately $4,000 per month. Rather than requiring the husband to pay the wife her share in cash or liquid assets, the parties afforded the husband the opportunity to sell the house and turn over the proceeds to the wife. The matters of how quickly the house sold and for how much were placed squarely on the husband's shoulders, which he voluntarily assumed. Such considerations lead us to the conclusion that the parties intended the $4,000 payment to be a means of providing the wife an immediate income from her equitable apportionment award. The fact that she was expected to use the substituted investment income for her own support is of no consequence. The conclusion the award was in the nature of a property division is compelling.

### III.

The husband also claims he should be relieved of the obligation to pay the insurance, taxes, and maintenance on the home because these expenses also are in the nature of alimony payments. We conclude these payments were designed to preserve the marital home pending its sale, and accordingly are part of the property division. *See Woodside v. Woodside*, 290 S.C. 366, 350 S.E. (2d) 407 (Ct. App. 1986) (this court affirmed the requirement that a husband make mortgage payments pending a sale of the marital home so as to preserve the asset). Thus, we affirm the trial court's order requiring the husband to reimburse the wife for these amounts and to continue making them until the house is sold.

### IV.

The husband next asserts the family court erred in requiring him to reimburse the wife for monies she claims she incurred for expenses for the children. The husband argues that neither Paragraph 1 nor Paragraph 9 of the agreement place an affirmative obligation on him to support either of his children beyond the age of eighteen years. Thus, he claims the wife was a volunteer with regard to the payments made by her to the children.

The wife testified the children would send her bills for tuition and educational expenses, and she passed them on to the husband's lawyer. She stated the husband stopped paying these bills, so she paid them. The wife prepared a summary of educational expenses she paid totalling $27,158.26.

The trial court required the husband to pay the sums expended by the wife finding the payment of these sums "were [the husband's] obligation under the Agreement." The question therefore posited is whether the agreement obligates the husband to pay the educational and living expenses[3] of the children. A literal reading of Paragraph 9 of the agreement, provides that the husband will relieve the wife of any responsibility for the financial support of their children, but in no way obligates him to support the children in any way. Considering the fact that until age eighteen both parties were legally responsible for Suni's support, the effect of the agreement is to relieve the wife of that obligation contractually. In like manner, as to the children's educational expenses beyond their eighteenth birthday, a family court, pursuant to S.C. Code Ann. § 20-7-420(17) (Law. Co-op. 1976), may have ordered both parents to pay their emancipated children's educational expenses. If such an order had been entered in this case, clearly, the husband would have been required under the terms of the agreement to reimburse the wife for any sum she was required to pay for the children. Here, neither the wife nor the children applied to the court for a determination of the parties' post-emancipation obligations to the children.

We therefore agree with the husband that in the absence of a court order finding the children entitled to post-emancipation support from their parents, or an enforceable agreement between the parties establishing an obligation on the husband's part to pay their educational expenses, any sums expended by the wife for their support may not be recovered under the provisions of the agreement. Furthermore, as to those educational expenses paid by the wife for Suni prior to her reaching age eighteen, we affirm the order of the family court and remand for a determination of the amount she is entitled to be reimbursed.

---

[3] We consider educational and living expenses for children above the age of eighteen who are still in school to be one and the same.

As a final note, the trial court only ordered the husband to pay the educational and living expenses for the children "until such time as they each graduate from college to the extent that such expenses are not paid by their respective trusts."[4] The husband testified his "position in the matter" was "insofar as the trust will pay things on behalf of the children . . . it should do so" and he would pay any other "things on behalf of the children." Hence, as we interpret the husband's objection to the trial court's order, it relates solely to the requirement to reimburse the wife.

## V.

Finally, the husband claims error in the trial court's award of attorney fees in the amount of $47,488.70. He concedes in his brief, however, that the amount of attorney fees incurred by the wife was reasonable. He argues, nevertheless, that "in light of the fact that the lower court erred in its analysis and holdings . . . it is inconceivable that husband should have to pay wife's attorney fees." He also argues the wife's conduct necessitated the institution of this action, and that she is not entitled to a finding that she obtained beneficial results. Moreover, he argues she is financially able to pay her own attorney fees. Having basically concluded these issues adversely to the husband, these arguments for reversing the attorney fees award have little appeal to us.

As pertains to the necessity of the husband having to bring this action, we note that he commenced this action to strip the wife of the only significant marital asset she received in the equitable division. The wife has prevailed in this litigation both at trial and on appeal. The record indicates the husband has substantial nonmarital assets and will receive substantial marital assets in this distribution. He does not claim he is unable to pay the attorney fees awarded the wife. As stated in *E.D.M. v. T.A.M.*, 307 S.C. 471, 415 S.E. (2d) 812 (1992), in determining whether an attorney fee should be awarded, the following factors should be considered: (1) the

---

[4] The husband argues, in two sentences in his brief without citation to authority, that the wife had no standing to seek child support, past or present, from him. This issue was not raised to or ruled upon by the family court judge. Hence, we may not address it. *Talley v. South Carolina Higher Educ. Tuition Grants Committee*, 289 S.C. 483, 347 S.E. (2d) 99 (1986).

party's ability to pay his/her own attorney's fee; (2) The beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fee on each party's standard of living. Applying these factors to the circumstances of this case, we find no abuse of discretion in the trial court's award of attorney fees.

For the foregoing reasons, we affirm as modified, but remand for the reason stated herein.

Affirmed as modified and remanded.

SHAW and HEARN, JJ., concur.