543 S.E.2d 224

Amy N. HEINS, Appellant,

v.

Donald L. HEINS, Respondent.

No. 3281.

Court of Appeals of South Carolina.

Heard Dec. 13, 2000.
Decided Jan. 8, 2001.

Charles S. Altman and Robert E. Culver, of Finkel & Altman, of Charleston, for appellant.

D. Dusty Rhoades, of Charleston, for respondent.

ANDERSON, Judge:

Amy N. Heins ("Wife") brought a contempt action against her former husband, Donald L. Heins ("Husband"), to enforce several provisions of their property settlement agreement. The agreement was incorporated into the couple's final decree of divorce. The Family Court initially held Husband in contempt; however, it reversed itself on reconsideration and additionally awarded Husband attorney's fees and costs. We reverse.

## FACTS/PROCEDURAL BACKGROUND

In September 1997, Wife brought an action against Husband for divorce. On the day of trial, the parties reached a settlement agreement. The court held a final hearing, which included extensive discussion on the terms of the agreement. By written order, the Family Court granted Wife a divorce on the grounds of adultery. The decree incorporated the parties' property settlement agreement. The agreement contained the following provisions:

- "Husband agrees to hold harmless and indemnify Wife from any debt personally incurred by him subsequent to the parties' separation.";

- "Wife agrees to hold harmless and indemnify Husband of any debts personally incurred by Donald Heins on behalf of Heins Plumbing, Inc. in the necessary and legitimate operation thereof disclosed by Husband prior to the final hearing. . . ."; and

- "Within thirty (30) days from the date of this Order, Husband agrees to transfer all his right, title, and interest to all assets, both business and personal, including but not limited to, the following:

  . . . .

  e. The business known as Heins Plumbing, Inc., and all its assets, tangible or intangible, including, but not

limited to, its trade name, its vehicles; its tools and equipment; its telephones; its facsimile machine; its pagers; its cellular phones; its inventory, furniture, and fixtures;"

Some five months later, Wife petitioned the court for a contempt order. Wife asserted Husband failed to: (1) indemnify and hold her harmless for $9,477.61 in personal debts he incurred after their separation and satisfied using Heins Plumbing funds; (2) disclose to her, before the final hearing, additional accounts payable totaling $5,646.21;[1] and (3) surrender certain business assets to Wife valued at $4,381.00.

After a hearing, the Family Court issued an order holding Husband in contempt for his willful failure to surrender business assets. As a result, Husband was ordered to pay Wife $4,146.00.[2] Husband was additionally required to pay Wife $750.00 in attorneys' fees. The court found, however, Husband was under no obligation to repay either the incurred personal expenses or the undisclosed accounts payable. The court reasoned:

[Wife] is an accountant, almost a Certified Public Accountant, who has access to all of the books and records of Heins Plumbing, Inc., and is involved more than most people usually are in accounting, [and] could have discovered any possible errors or discrepancies of the financial disclosures that she asserted to the Court she had at the time of entering into the final consent order and divorce decree.

---

1. In an amended affidavit supporting her contempt motion, Wife claimed Husband had failed to show an additional $5,646.21 in accounts payable before the date of the final hearing. Nevertheless, during the contempt hearing, Wife stipulated the sum was $5,486.29. Her brief to this Court continues to refer to $5,486.29 as the undisclosed amount.

   Husband provided a financial statement from his accountant the month of the final hearing that detailed the financial status of Heins Plumbing. Husband's accounting revealed $11,378.85 in accounts payable. When Wife assumed control of the business following the final hearing, she discovered the accounts payable were actually $16,865.14.

2. Wife initially valued the untransferred business assets at $4,381.00; however, this valuation was revised at the contempt hearing and established as $4,146.00.

Wife moved for reconsideration, arguing, *inter alia,* the Family Court erred in failing to require Husband to be responsible for his personal debts and the undisclosed accounts payable. In his return, Husband denied Wife was entitled to the relief she requested. He requested disbursement of his portion of the funds escrowed from the sale of real property that was required to be sold pursuant to the couple's settlement agreement. Husband did not otherwise seek reconsideration. The Family Court denied Wife's motion. As well, the court reversed its prior decision, *sua sponte,* which held Husband in contempt. The judge found Wife's action against Husband was based on "regrets" and "dissatisfaction for having entered into [the property settlement] agreement." The court further rescinded its earlier commandment requiring Husband to contribute $750.00 to Wife's attorneys' fees, and instead directed Wife to pay Husband $4113.92 for attorney's fees he accumulated in defense of the reconsideration motion. Husband was awarded the escrowed funds.

Wife again moved for reconsideration. That motion was denied, with the exception of a $170.00 downward adjustment in the award of attorney's fees to Husband. This appeal followed.

### STANDARD OF REVIEW

On appeal from the Family Court, this Court has jurisdiction to find the facts in accordance with its view of the preponderance of the evidence. *Murdock v. Murdock,* 338 S.C. 322, 526 S.E.2d 241 (Ct.App.1999). This tribunal, however, is not required to disregard the Family Court's findings. *Badeaux v. Davis,* 337 S.C. 195, 522 S.E.2d 835 (Ct.App.1999). Likewise, we are not obligated to ignore the fact the Family Court judge, who saw and heard the witnesses, was in a better position to evaluate their testimony. *Smith v. Smith,* 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997); *see also Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 477 S.E.2d 476 (Ct.App.1996) (because the appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to the Family Court's findings where matters of credibility are involved); *Terwilliger v. Terwilliger,* 298 S.C. 144, 378 S.E.2d 609 (Ct.App.1989) (resolving questions regard-

ing credibility and the weight given to testimony is a function of the Family Court judge who heard the testimony).

## ISSUES

I.  Did the Family Court err in *sua sponte* reversing its initial decision that Husband had willfully failed to surrender certain business assets?

II.  Did the Family Court err in failing to find Husband liable for the personal expenses he incurred following the couple's separation and satisfied using Heins Plumbing funds?

III.  Did the Family Court err in declining to interpret the couple's agreement as requiring Husband to be responsible for business debts he failed to disclose to Wife before the date of the final hearing?

IV.  Did the Family Court err in awarding Husband attorney's fees?

## LAW/ANALYSIS

### I.  Husband's Failure to Surrender Business Assets

Wife avers the Family Court erred in *sua sponte* reversing its initial order following the contempt action that Husband had willfully failed to surrender certain business assets. We agree.

■ It is well settled that ordinarily a party may not receive relief not contemplated in his pleadings. *Loftis v. Loftis*, 286 S.C. 12, 331 S.E.2d 372 (Ct.App.1985).

> While it is true that pleadings in the family court must be liberally construed, this rule cannot be stretched so as to permit the judge to award relief not contemplated by the pleadings. Due process requires that a litigant be placed on notice of the issues which the court is to consider.

*Bass v. Bass*, 272 S.C. 177, 180, 249 S.E.2d 905, 906 (1978) (footnote omitted).

■ The Family Court found Husband in contempt because he did not relinquish $4,146.00 in business assets to Wife. Husband was mandated to pay Wife this amount. Husband did not make a request to alter or amend this decision.

Moreover, neither Wife's subsequent Rule 59(e), SCRCP motion nor Husband's reply can be read to have brought this issue before the court for reconsideration.

While much has been written about the propriety of courts ruling on issues included in a Rule 59(e), SCRCP motion, but not raised at trial, a review of cases decided since the enactment of the South Carolina Rules of Civil Procedure reveals little comment on the permissibility of a trial court altering or amending an order on its own initiative. Because Rule 59(e), SCRCP is substantially the federal rule,[3] an examination of authorities addressing this dilemma, as it pertains to the federal courts, is appropriate. A leading treatise on federal practice elucidates:

> Rule 59(e) is silent on the power of a court to alter or amend a judgment on its *own initiative,* unlike Rule 59(d), which authorizes the court to grant a new trial on its *own initiative.* It is unclear whether or not a court has this authority. Arguably, a court should have the power to alter or amend a judgment on its own motion, as long as it acts no later than 10 days after the entry of the judgment. The authorization in Rule 59(d) (and Rule 60(a)) for the court to act on its *own initiative* has been held to be only a declaratory example of the general power of a court to act on its *own initiative* in many respects. However, when the court acts on its *own initiative,* the court must act within 10 days of the entry of judgment.

25 Moore's Federal Practice § 59.33 (Matthew Bender 3d ed.2000) (emphasis added) (footnotes omitted).

In *Burnam v. Amoco Container Company,* 738 F.2d 1230 (11th Cir.1984), an employee of Amoco filed a complaint against the company, alleging she was a victim of age discrimination. Amoco filed its answer and a motion to dismiss. The employee in turn filed a response to Amoco's motion. Soon thereafter, the federal district court issued an order dismissing the employee's complaint. No additional motions or other documents of any nature were filed by either party after the trial court's order. Nonetheless, 10 days later, the district court, on its own volition, entered another order, explaining that it had not received the employee's response to Amoco's

---

**3.** 25 S.C. Juris. *Rules of Civil Procedure* § 59.1 (1994)

motion to dismiss until after the initial order was entered. The court further stated: "[t]he court has now considered the plaintiff's arguments in opposition to the motion to dismiss and finds them to be without merit. The court's [initial] order ... remains the order of this court. The instant order is issued as a clarification of the grounds set forth in the previous order." *Id.* at 1231. On appeal, the Eleventh Circuit was faced with the question of whether, pursuant to Rule 59(e), the trial court had the power to amend its initial judgment, *sua sponte*. The appellate tribunal responded:

> The Rules of Civil Procedure are unclear [regarding whether a district court may, *sua sponte*, consider the availability of Rule 59(e) relief]. For example, Rule 60(a) authorizes the court to correct clerical mistakes and other errors on its own initiative. Likewise, Rule 59(d) states that a court may grant a new trial on its own initiative. In contrast, Rule 59(e) is silent on the power of the court to order relief on its own initiative. Arguably, such silence implies that the court lacks such power. We decline to make such an inference.... Thus, so long as the court acts within ten days after the entry of judgment, the court has the power on its own motion to consider altering or amending a judgment....

*Id.* at 1232.

The *Burnam* holding has been recognized and applied on numerous occasions. *E.g., Continental Lab. Prods., Inc. v. Medax Int'l., Inc.,* 114 F.Supp.2d 992 (S.D.Cal.2000); *Marshall v. Shalala,* 5 F.3d 453 (10th Cir.1993); *Useden v. Acker,* 947 F.2d 1563 (11th Cir.1991).

In addition to *Burnam,* this Court finds *Hidle v. Geneva County Board of Education,* 792 F.2d 1098 (11th Cir.1986), edifying. Hidle filed suit in federal district court, alleging the Geneva County Board of Education had established a pattern and practice of favoring males over females in its hiring for supervisory and administrative positions, which resulted in the school board denying employment to Hidle, a female. After trial, the court issued a written opinion that asseverated the school board had violated federal law by refusing to hire Hidle for an assistant principal's position because of her sex. Regarding damages, the court did not grant Hidle her request

for back-pay; however, it did order the school district to offer Hidle the next vacant assistant principalship. Hidle timely filed a motion to alter and amend the judgment pursuant to Rule 59(e). She raised only the questions of back-pay and the court's failure to require her immediate instatement into the job she was originally denied. The school board filed no post-judgment motion requesting alteration or amendment. The district court subsequently denied Hidle's motion, set aside its order, and entered an amended judgment in favor of the school district. The time period between the initial judgment and the second order was seven months.

At issue on appeal was whether a party's motion to alter or amend a judgment pursuant to Rule 59(e) permits the trial court, *sua sponte,* to vacate a judgment in favor of the moving party so as to rule in favor of the non-moving party:

Strong policy considerations militate against what occurred here. The court ... arguably erred in denying [back-pay], job instatement, and injunctive relief against future discrimination, as well as in assigning the burden of proof of mitigation. When plaintiff sought to present these matters as a basis for altering or amending the remedies afforded her, she lost her judgment to the defendant who had not asked any post-judgment relief. This inhibits the error-correcting function of a Rule 59(e) motion. If the district court is correct, a successful plaintiff given a less-than-complete remedy could not ask for correction without putting at risk the judgment in her favor though the party cast in judgment has raised no question of the validity of the judgment. A defendant successful on five claims cannot safely seek for correction concerning claim six.

. . . .

The lapse of time is of real concern. This court has held, in *Burnam v. Amoco* ... that where no motion has been filed by either party[,] a district court has a limited power to act *sua sponte* to alter or amend a judgment so long as done within ten days after the judgment is entered. If *Burnam* controls, the district court here exceeded its authority because of the ... delay. Here a motion was made by plaintiff. Possibly the filing of a motion by a party opens up the judgment to a greater extent than the court itself can open it up without a motion. Nevertheless, the interest of

the parties and society in the finality of judgments, and the legitimate expectation of the parties concerning the judgment to the extent it is not questioned by the parties, speak against pulling the rug from under the plaintiff [seven] months after she filed her motion to correct errors in the remedy granted her.

*Id.* at 1100.

A recent case decided by our Supreme Court, *Leviner v. Sonoco Products Company,* 339 S.C. 492, 530 S.E.2d 127 (2000), lends support to the proposition that a trial judge may alter or amend a judgment, *sua sponte,* but must do so within 10 days after the judgment was entered. *Leviner* was a workers' compensation case. In that dispute, the single commissioner found Leviner had reached maximum medical improvement and awarded him permanent disability. The full commission affirmed. Leviner appealed to the Circuit Court, which issued a form order, remanding the case to the single commissioner. Neither party filed a Rule 59(e), SCRCP motion within the 10–day period allowed by the rule. A month later, the Circuit Court entered a full written order purporting to vacate the commission's orders and finding Leviner totally disabled. Sonoco appealed. The Court of Appeals reversed the second order, holding the Circuit Court exceeded its appellate jurisdiction in finding Leviner totally disabled. The matter was remanded to the single commissioner for a *de novo* hearing, pursuant to the initial form order. Upon its review, the Supreme Court concluded the second order was void:

[T]he trial judge's full written order filed ... more than thirty days later, was patently untimely. Under Rule 59(e), SCRCP, trial judge has only ten days from entry of judgment to alter or amend an earlier order on his own initiative .... When no timely Rule 59 motion was made nor timely *sua sponte* order filed under Rule 59(e), the ... form order "matured" into a final judgment. The [subsequent] order ... was a nullity because the trial judge no longer had jurisdiction over the matter.

*Id.* at 494, 530 S.E.2d at 128.

The *Leviner* holding was founded in large part upon the Supreme Court's ruling in *Doran v. Doran,* 288 S.C. 477, 343

S.E.2d 618 (1986). *Doran* was a domestic relations case. In his petition for divorce, Husband sought equitable distribution of the marital assets. Wife listed a savings account on her financial declaration. In his final order, the trial judge divided the parties' various real and personal property, but did not expressly mention the savings account. Neither party appealed the order. More than a month later, the judge, on his own volition, issued a supplemental order reserving jurisdiction to divide the savings account. After a hearing, the judge awarded 57% of the savings account to Husband. This case was heard before the promulgation of Rule 59(e), SCRCP; nevertheless, Chief Justice Ness, writing for a unanimous Court, declared a trial court's authority to alter or amend its decision, *sua sponte*, was time-limited:

> A trial judge loses jurisdiction to modify an order after the term at which it is issued.... Once the term ends, the order is no longer subject to any amendment or modification which involves the exercise of judgment or discretion on the merits of the action.[4]

*Id.* at 478, 343 S.E.2d 618 (citations omitted).

██ We rule a Family Court judge does not have the authority to alter or amend a judgment, *sua sponte*, once the judgment is more than 10–days–old. In the case *sub judice*, the order addressing Wife's contempt motion was filed January 29, 1999. On June 3, 1999, the Family Court entered its order in response to Wife's first reconsideration motion. The interim between these orders clearly exceeded the 10–day period permitted by Rule 59(e), SCRCP. Therefore, the Family Court's grant of relief to Husband from his obligation to Wife regarding the business assets is reversed.

## II. Personal Expenses in the Amount of $9,477.61

Wife asserts the Family Court erred in failing to find Husband liable for the $9,477.61 in personal expenses he

---

4. In a footnote, the Court noted that under Rule 59(e), SCRCP, which was enacted in the time between the initial proceedings and the appeal, the trial judge would have had the authority to alter or amend the order, but only for a 10–day period after entry of the judgment.

incurred following the couple's separation and satisfied using Heins Plumbing funds. We agree.

The parties' agreement enunciated:

Husband agrees to hold harmless and indemnify Wife from any debt personally incurred by him subsequent to the parties' separation.

The parties separated on August 14, 1997. The report of Husband's accountant identified $9,477.61 in personal debt incurred by Husband after the parties separated, including attorney's fees and costs, which Husband paid from the Heins Plumbing account.

Unambiguous marital agreements will be enforced according to their terms. *Lindsay v. Lindsay,* 328 S.C. 329, 491 S.E.2d 583 (Ct.App.1997). Where an agreement is clear and capable of legal interpretation, the court's only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it. *Ebert v. Ebert,* 320 S.C. 331, 465 S.E.2d 121 (Ct.App.1995). The court must enforce an unambiguous contract according to its terms, regardless of the contract's wisdom or folly, or the parties' failure to guard their rights carefully. *Ellis v. Taylor,* 316 S.C. 245, 449 S.E.2d 487 (1994). To discover the intention of a contract, the court must first look to its language—if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect. *Superior Auto. Ins. Co. v. Maners,* 261 S.C. 257, 199 S.E.2d 719 (1973); *see also McPherson v. J.E. Sirrine & Co.,* 206 S.C. 183, 33 S.E.2d 501 (1945) (the court cannot read words into a contract that import an intent wholly unexpressed when the contract was executed); *Stewart v. Morris,* 84 S.C. 148, 65 S.E. 1044 (1909) (the court must interpret language in its natural and ordinary sense, except where technical language or the context requires another meaning).

In his brief, Husband does not contest the personal nature of the expenses at issue. Neither does he argue the debts were necessary to the operation of the business. Rather, Husband asserts Wife did not incur any loss or damage to a third party due to his actions; thus, his duty to indemnify her was not triggered. We reject this argument.

This Court finds the agreement unambiguously holds Husband solely accountable for the personal debts he incurred after the parties' separation. The agreement is clear and capable of only one legal interpretation, *i.e.*, husband is liable for the personal expenses paid from Heins Plumbing funds. Under separate provisions of the agreement, Husband was obligated to surrender all Heins Plumbing assets to Wife. His draining of corporate funds to pay his personal debts diminished the value of the assets that were to be transferred. Such activity was inequitable. Accordingly, we hold Husband must pay Wife $9,477.61 for the personal expenses he impermissibly appropriated from Heins Plumbing.

### III.   Husband's Failure to Disclose All Business Debts Before Date of Final Hearing

Wife maintains the Family Court erred in declining to interpret the property settlement agreement as requiring Husband to be responsible for business debts he failed to disclose before the date of the final hearing. We agree.

The parties' agreement specifically provides:

"Wife agrees to hold harmless and indemnify Husband of any debts personally incurred by Donald Heins on behalf of Heins Plumbing, Inc., in the necessary and legitimate operation thereof *disclosed by Husband prior to the final hearing.*"

(emphasis added).

In June 1998, Husband had an accountant prepare a financial statement, which showed $11,378.85 in current liabilities at Heins Plumbing. Wife relied on the accuracy of this statement in entering into the parties' settlement agreement. When Wife assumed control over the business after the final hearing, she learned the financials failed to reveal an additional $5,486.29 in debts.

The provision obligating Wife to pay the disclosed debts is, in our view, rendered meaningless unless it is read to infer the complimentary measure—Husband will be held responsible for any undisclosed obligations. *Wilder Corp. v. Wilke*, 324 S.C. 570, 582, 479 S.E.2d 510, 516 (Ct.App.1996) ("[T]he law will imply consistent terms into a contract if reason, justice, honesty, or fairness would lead a court to believe that the parties

omitted the implied terms.") (citing *Southern Realty and Constr. Co. v. Bryan,* 290 S.C. 302, 350 S.E.2d 194 (Ct.App. 1986)). Clearly, the purpose of the disclosure provision is to allocate all business debts between the parties, with Wife ultimately responsible for all disclosed legitimate business debts.

We reject Husband's argument Wife waived any right she may have had to complain about the undisclosed debts by her failure to discover them before entering into the agreement. The requirement that Husband disclose all business debts before the final hearing was not conditioned on Wife's independent discovery. Rather, Husband had an absolute affirmative duty to inform Wife of all business debts he incurred prior to the final hearing, notwithstanding Wife's pursuits into investigating the books.

### IV. Family Court's Award of Attorney's Fees to Husband

Wife contends the Family Court erred in awarding Husband attorney's fees. We agree.

In determining whether to award attorney's fees, the court should consider: each party's ability to pay his or her own fees; the beneficial results obtained by the attorney; the parties' respective financial conditions; and the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 415 S.E.2d 812 (1992); *Doe v. Doe,* 324 S.C. 492, 478 S.E.2d 854 (Ct.App.1996).

In light of our disposition of the merits of this appeal, which has negated any beneficial results obtained by Husband's counsel at the trial court level, an award of attorney's fees to Husband is not warranted.

### *CONCLUSION*

We hold a Family Court judge does not have the jurisdiction to alter or amend a judgment, *sua sponte,* when more than 10 days have elapsed since the judgment's entry by the clerk of court. In the instant case, the Family Court, on its own initiative, reversed its contempt order regarding Husband's wilful failure to transfer certain business assets to Wife

in a subsequent decision more than five months later. The court undeniably surpassed the 10–day limitation; therefore, the latter determination regarding the business assets is invalid.

A property settlement agreement between a divorcing husband and wife is a contract. The rules that govern the interpretation and enforcement of contracts are therefore in force. It is well-settled that an unambiguous contract must be applied by the courts pursuant to the agreement's terms. In the instant case, Husband and Wife clearly agreed, without condition, that: Husband would transfer his interest in Heins Plumbing's assets to Wife; Wife would be indemnified by Husband for any personal debt he incurred after their separation; and Wife would assume all liabilities Husband undertook on behalf of Heins Plumbing, provided he disclosed the debts to Wife before the date of the final hearing. Husband is required to immediately remit $19,859.90 to Wife.[5] Accordingly, the Family Court's post-divorce decree determinations that granted Husband an award of attorney's fees and costs and absolved him from his obligations to pay his personal expenditures, undisclosed business debts, and the value of the untransferred business assets are

**REVERSED.**

HEARN, C.J. and STILWELL, J., concur.

---

**5.** This sum was calculated as follows:

$ 4,146.00 (Value of the untransferred business assets)

9,477.61 (Amount of personal expenses incurred by Husband following separation)

5,486.29 (Amount of business debts not disclosed by Husband before final hearing date)

750.00 (Attorneys' fees granted to Wife in the Family Court's Contempt Order)

---

$19,859.90 Total Amount Due to Wife