THIS OPINION HAS NO
PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH
CAROLINA
In The Court of Appeals

 
 
 
 Stephen G. Ballentine,       
 Appellant,
 
 
 

v.

 
 
 
 Norma M. Ballentine,       
 Respondent.
 
 
 

Appeal From Charleston County
Frances  P. Segars-Andrews, Family Court Judge

Unpublished Opinion No.
2005-UP-413
Heard June 15, 2005  Filed June 27, 2005

AFFIRMED

 
 
 
 John Joseph Dodds, III, of
 Mt. Pleasant, for Appellant.
 Donald Bruce Clark, and H.
 Stanley Feldman, both of Charleston, for Respondent.
 
 
 

PER CURIAM:  Stephen G.
Ballentine (Husband) was granted a divorce from Norma M. Ballentine (Wife) on
February 20, 2001.  Husband appeals a family court order that found the
parties Separation Agreement, which was incorporated into the final divorce
decree, was ambiguous.  We affirm.
FACTS
Husband was granted a divorce on
February 20, 2001.  The Final Decree incorporated the parties Separation
Agreement, which, among other things, provides for a division of personal
property and financial accounts.  The Agreement states:

 B.      Personal
 Property and Financial Accounts
         
 . . . .
 2.      
 The SARSEP account, Husbands IRA, Husbands 401k, Wifes 401k, and Wifes
 IRA will be divided as set forth in Exhibit A.
 3.      
 The purpose of Exhibit A is to illustrate the apportionment of the property
 listed and to show the adjustment that has to be made in order to achieve the
 fifty-eight (58%) percent/forty-two (42%) percent distribution.  The
 adjustment itself is to be drawn from the Wifes 401k by way of a Qualified
 Domestic Relations Order (QDRO).  The parties agree to request that this
 Court retain jurisdiction for the purpose of any supplemental orders which may
 be necessary. 

Exhibit A is a schedule of the
parties assets, the net value of which is listed as $1,306,537.  As
noted on Exhibit A, the assets were allocated in such a way that Husbands
share was $548,746 and Wifes share was $757,791.  In order to achieve
the desired 58%/42% distribution, a $128,187 adjustment was to be paid to
Husband, the adjustment to be drawn from wifes 401k plan. 
On January 8, 2002, the family court
entered a QDRO directing Wifes employer, BellSouth, to disburse to Husband
his share of Wifes 401(k).  BellSouth received the QDRO, but informed
Husbands counsel by a letter dated March 12, 2002, that it did not meet
requirements of ERISA and the Internal Revenue Code.  Specifically,
BellSouth instructed: The Order should be amended to address the issue of
whether or not the Alternate Payees benefits will be credited with gains and
losses accumulated between the assignment date and the date of distribution. 
Husbands counsel forwarded the BellSouth letter to Wifes counsel, along
with a request that Wife secure an amended QDRO addressing the concerns raised
by BellSouth.  The family court entered an Amended QDRO on May 15,
2002.  Paragraph five of the Amended QDRO provides:

 The BELLSOUTH RETIREMENT
 SAVINGS PLAN 401(k) is directed to pay, to the Alternate Payee, ONE
 HUNDRED TWENTY EIGHT THOUSAND, ONE HUNDRED EIGHTY SEVEN AND NO/100
 ($128,187.00) of the account balances credited to the Plan Participant as of
 February 20, 2001, to include gains or losses on this amount.

BellSouth received the Amended QDRO
in June of 2002, and on August 14, 2002, BellSouth notified the parties the
order had been approved.  Husband was issued a check for $87,138.99 on
September 25, 2002.  This amount constitutes the $128,187 adjustment, minus
losses incurred by the plan between February 20, 2001 and the date of
distribution.
On November 26, 2003, over a year
after receiving the check from BellSouth, Husband requested that Wife consent to
a third QDRO which would provide that Husbands adjustment of $128,187 would
not reflect gains or losses accumulated between February 20, 2001 and the date
of distribution.  Wife declined Husbands request. 
Consequently, on January 28, 2004,
Husband filed a Motion for Rule to Show Cause alleging Wife was in contempt for
failing to consent to the third QDRO.  After a hearing, the family court
issued an order dismissing Husbands Rule to Show Cause.  The court found
the Separation Agreement was ambiguous as to whether Husbands adjustment was
subject to gain and loss fluctuations between the entry of divorce and
settlement of the account.  The family court noted that [n]either the
Settlement Agreement nor the QDRO guaranteed the Plaintiff a minimum amount of
$128,187 payable from Defendants BellSouth 401(k).  To the contrary, the
whole point of both was to effectuate the 58%/42% division of the marital
property, as it was valued on February 20, 2001.  Reading the Amended
QDRO along with the Final Decree, the court determined the parties intended
Husband to receive $128,187, plus any gains or minus any losses.  Husband
appeals this order dismissing his Rule to Show Cause. 
LAW/ANALYSIS

The pertinent provision giving Husband the adjustment from Wifes BellSouth
401(k) is found in the Final Decree.  However, the decree incorporated the
Separation Agreement, which was entered into by the consent of the
parties.  Thus, as in Bogan v. Bogan, 298 S.C. 139, 142, 378 S.E.2d
606, 608 (Ct. App. 1989), we are essentially dealing with an agreement
between the parties. 
Where an agreement is clear and
capable of legal interpretation, the courts only function is to interpret its
lawful meaning, discover the intention of the parties as found within the
agreement, and give effect to it.  Heins v. Heins, 344 S.C. 146, 543
S.E.2d 224 (Ct. App. 2001).  The court must enforce an unambiguous
contract according to its terms, regardless of the contracts wisdom or folly,
or the parties failure to guard their rights carefully.  Id.
at 158, 543 S.E.2d at 230.  If a contracts language is plain,
unambiguous, and capable of only one reasonable interpretation, no construction
is required, and the contracts language determines the instruments force
and effect.  Jordan v. Security Group, Inc., 311 S.C. 227, 428
S.E.2d 705 (1993).
When an agreement is ambiguous, the
court should seek to determine the intent of the parties.  Ebert v.
Ebert, 320 S.C. 331, 465 S.E.2d 121 (Ct. App. 1995).  A contract is
ambiguous when it is capable of more than one meaning or when its meaning is
unclear.  Smith-Cooper v. Cooper, 344 S.C. 289, 295, 543 S.E.2d
271, 274 (Ct. App. 2001). 
We agree with the family court that
the Separation Agreement was ambiguous as to whether Husbands adjustment was
subject to gains and losses accrued between the date of divorce and the date of
distribution.  On one hand, the agreement did not state Husband was
entitled to a definite, lump sum payment of $128,187.  On the other hand,
the Separation Agreement also did not specifically provide that Husbands
adjustment was subject to gains or losses.  The Separation Agreement simply
fails to address the issue and is susceptible to more than one reasonable
interpretation.
The Amended QDRO resolves the
ambiguity by clarifying the adjustment should take into account gains and losses
accrued.  Thus, read together, the Separation Agreement and the Amended
QDRO provide that Husbands adjustment is subject to market
fluctuations.  Because the Amended QDRO and the Separation Agreement are
reconcilable, the family court properly determined they should be read
together.  See Davidson v. Davidson, 916 S.W.2d 918, 923
(Tenn. Ct. App. 1995). 
The Amended QDRO takes a sound
approach to clarifying the ambiguity in the Separation Agreement.  The
parties expressed a clear intent to split personal property and financial
accounts 58% to Wife, 42% to Husband.  Ideally, Wifes BellSouth 401(k)
would have been divided on the date of divorce.  However, the federal law
requirements for alienating a retirement account render the process time
consuming.  29 U.S.C.A. section 1056 sets forth a number of criteria for
establishing an exception to the general rule against assignment or alienation
of pension plans.  Plan administrators are required to analyze QDROs to
ensure they comply with the applicable federal law.  See 29 U.S.C.A.
§ 1056(d)(3)(G)(i)(II).  As a result, Husband was not able to obtain his
share of Wifes 401(k) at the time of divorce.
As of the date of divorce, the
BellSouth 401(k) was valued at $314,275.  The unfortunate downturn in the
financial markets and the domestic turmoil occurring in 2001 resulted in both
Husband and Wife suffering substantial losses to their respective shares of Wifes
401(k).  Under the Amended QDRO, the parties bear this loss in accordance
with their agreed upon distribution ratio of 58%/42%.  Of course, had the
parties clearly expressed that Husband was entitled to a fixed sum of $128,187,
such an agreement would control.  However, considering the ambiguity in the
Separation Agreement, we hold the family court correctly interpreted the
agreement in conjunction with the Amended QDRO to best effectuate the parties
intent.  Accordingly, we affirm the family courts dismissal of Husbands
Rule to Show Cause. 
CONCLUSION
The order of the family court is
AFFIRMED.
ANDERSON, STILWELL, and WILLIAMS,
JJ., concur.