THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
George H. Dowd, III, Respondent,
v.
Ginger W. Dowd, Appellant.
 
 
 

Appeal From Charleston County
  H. T. Abbott, III, Family Court Judge

Unpublished Opinion No. 2006-UP-396
Heard September 27, 2006  Filed December 6, 2006

AFFIRMED IN PART and REVERSED IN PART

 
 
 
Patrick F. Stringer, of Charleston, for Appellant.
Anne Frances Bleecker, of Charleston, for Respondent.
 
 
 

PER CURIAM:  Ginger W. Dowd (Wife) appeals the family courts order reducing the alimony she receives from George H. Dowd, III (Husband), to zero based upon a provision in the Final Order and Decree of Divorce.  Additionally, Wife maintains the court erred in requiring her to reimburse Husband for alimony paid after the filing of the complaint and pay part of Husbands attorneys fees.  We affirm in part and reverse in part.
FACTS
The parties divorced in 1991.  The Final Order and Decree of Divorce, dated April 8, 1991, approved and adopted a settlement agreement by the parties.  The order provided:  

After the marital home is sold, the Husband shall pay seven hundred ($700.00) [d]ollars per month to the Wife as permanent and periodic alimony. . . . If the Wife cohabitates with a man on a continuous and romantic basis, the alimony payment will be reduced to zero (0)[;] however[,] the obligation to pay alimony will not be terminated.  

The parties had three daughters during the marriage.  Wife was originally granted custody of the children.  However, the two older daughters were later allowed to move in with Husband.
In 1990 or 1991 Wife met Skip Joyner at a Parents Without Partners meeting.  Wife frequently visited Joyners residence and would periodically take the children there for the weekend.  Joyner was involved in many activities with the children, including Christmas, vacations, and graduations.  In 1992, Joyner adopted a baby girl.  Joyners daughter was also involved in many of the activities with Wife and her daughters.  Wife acted as a mother in helping to raise Joyners child.  
In 1995, Husband brought an action seeking custody of the parties youngest daughter.  A consent order was issued by the court.  The parties agreed that Wife would pay no child support and, as a result, the alimony paid by Husband was reduced to $550.00 per month.  The consent order contained a provision which stated:  All provisions of the Decree of Divorce dated 4-8-91 shall remain in full force and effect except as are expressly modified herein.  
During the mid 1990s, Wife and Joyner were romantically involved, and, according to Wife, were engaged to be married.  Although the engagement ended, the two remained friends.  Wife continued to act as a mother figure to Joyners child.  She was listed as a contact person on the childs school records and was even listed as the childs mother on some records.
Wife moved in with Joyner for a period of time in 1999 when she became ill with Reactive Airway Disease.  In August of 2000, Husband wrote a letter to Wife seeking to end alimony due to her living with Joyner.  Wife subsequently moved in with a roommate and again kept a separate apartment.  However, Wife maintained she did not recall receiving a letter from Husband.    
In 2003, Joyner had a stroke and required care.  He had a daytime caregiver, and Wife moved in with Joyner in January 2004 to provide his nighttime care.  While she received no pay from Joyner for her services as caregiver, she did not have to pay rent to stay at his residence.
Husband brought the instant action on May 27, 2004.  The complaint alleged that Wife and Joyner began a relationship in 1990 and began living together in approximately 1997.  In addition, the action asked for reimbursement of attorneys fees and all costs.  Wife filed an answer and counterclaim, denying the relationship and seeking an increase in alimony.
At the hearing, the parties daughters testified that they spent time at Joyners house when they lived with Wife.  They testified the easiest way to get in touch with their mother was to call Joyners house and leave a message or they would find her already there at all times of day and night.  
Husband testified he believed Wife and Joyner lived together from 1997 through at least 2000, when he wrote her the letter seeking to end alimony.  Additionally, he testified he did not seek court intervention to reduce the alimony until the parties youngest daughter had graduated college.  Finally, he admitted he did not know where Wife was living at the time of the hearing, only that she admitted residing with Joyner for the previous six months.  
Wife admitted she and Joyner were previously engaged to be married and that the relationship was more than friends at that time.  However, she asserted that she maintained a separate residence for the majority of the time since her divorce.  She conceded to living with Joyner during 1999 and again at the time of the filing of the instant action.  However, she stated the move in 1999 was due to her illness, and the recent cohabitation was for the purpose of providing Joyners care.  Wife stated she acted as Joyners primary caregiver after his stroke and moved into his residence solely for that reason.  Wife testified she slept on his couch or in a spare room, and she and Joyner did not have sex after his stroke.  
Joyner also testified that the relationship with Wife was not romantic when she moved in with him after his stroke.  While he indicated Wife was the last person with whom he had a sexual relationship before his stroke, he also maintained it was not a recent sexual relationship.  Joyner testified Wife slept on his couch or in a spare room rent free.  He also admitted to giving her money to pay bills, but denied they had any joint accounts or that they commingled funds.  Finally, Joyner stated he was engaged at the time of the hearing to another woman.
The trial court found Wife and Joyner enjoyed a relationship that lasted for 15 or more years.  The court placed emphasis on the testimony regarding Joyners adopted child and the relationship between Wife and the child.  Additionally, the court found:  

Our laws do not allow a supported spouse to purposefully circumvent the prohibition against romantic cohabitation in order to continue receiving alimony.  I find [Wife] cohabitated with a man (Joyner) and, therefore, [Husbands] alimony obligation is reduced to zero.

The court then ordered Wife to reimburse Husband for alimony paid from the date he filed the complaint, totaling $7,700.00.  Finally, the court ordered Wife to pay $15,000.00 in Husbands attorneys fees.  
The courts decision to reduce the alimony to zero was based solely on the provision in the couples agreement and the Divorce Decree.  It was not based on a finding of a change in Wifes economic condition.  However, the family court did not address whether Wifes cohabitation with Joyner was romantic at the time the complaint was filed.  
Wifes motion to alter or amend was denied by the family court.  This appeal followed.
STANDARD OF REVIEW
In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. Rutherford v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992); Owens v. Owens, 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct. App. 1996).  However, this broad scope of review does not require us to disregard the family courts findings.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Cherry v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981); Miles v. Miles, 355 S.C. 511, 516, 586 S.E.2d 136, 139 (Ct. App. 2003).  Questions concerning alimony are left to the sound discretion of the trial judge, whose conclusions will not be disturbed absent a showing of abuse of discretion.  Kelley v. Kelley, 324 S.C. 481, 485, 477 S.E.2d 727, 729 (Ct. App. 1996).  An abuse of discretion occurs when the court is controlled by some error of law or
where the order, based upon the findings of fact, is without evidentiary support.  Engle v. Engle, 343 S.C. 444, 448-49, 539 S.E.2d 712, 714 (Ct. App. 2000).
LAW/ANALYSIS
I.       Reduction in Alimony
Wife argues the family court erred in reducing her alimony pursuant to the provision in the Final Order and Decree of Divorce.  Wife claims, although she had cohabitated in the past with Joyner in a romantic relationship, the court was in error because she was not presently cohabitating in a romantic relationship at the time the underlying action was filed.  Further, she contends the court erred in reducing the alimony to zero and requiring her to reimburse Husband for alimony paid after the filing of the complaint.  We affirm.
An unambiguous marital agreement incorporated into the parties divorce decree will be enforced according to the terms of the agreement.  Heins v. Heins, 344 S.C. 146, 158, 543 S.E.2d 224, 230 (Ct. App. 2001); see also Lindsay v. Lindsay, 328 S.C. 329, 491 S.E.2d 583 (Ct. App. 1997).  Where an agreement is clear and capable of legal construction, the courts only function is to interpret its lawful meaning and the intention of the parties as found within the agreement and give effect to it.  Ebert v. Ebert, 320 S.C. 331, 338, 465 S.E.2d 121, 125 (Ct. App. 1995).  
When an agreement is unambiguous, effect should be given according to the ordinary and popular sense of the words employed therein.  Lacke v. Lacke, 362 S.C. 302, 308, 608 S.E.2d 147, 150 (Ct. App. 2005).  The court must enforce an unambiguous contract according to its terms, regardless of the contracts wisdom or folly, or the parties failure to guard their rights carefully.  Heins, 344 S.C. at 158, 543 S.E.2d at 230 (citing Ellis v. Taylor, 316 S.C. 245, 449 S.E.2d 487 (1994)).  
The relevant provision in this case states:  If the Wife cohabitates with a man on a continuous and romantic basis, the alimony payment will be reduced to zero (0)[;] however[,] the obligation to pay alimony will not be terminated.  We find the provision is unambiguous and states clearly the conditions required for a reduction of the alimony payment to zero dollars.  Accordingly, the family court and this court are required to enforce the agreement pursuant to its terms.
Section 20-3-150 of the South Carolina Code (Supp. 2005) provides insight into the ordinary and popular definition of the terms used in the provision:  continued cohabitation means the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days.  The key term in this case is romantic which, while not specifically requiring the parties to have sexual relations, does require some level of intimacy and affection beyond that of an ordinary friendship.   
The family court based its decision on the fact that Wife and Joyner were in a relationship for a period of fifteen years.  During that time Wife and Joyner became temporarily engaged and the relationship took on romantic qualities.  Also, during the course of their fifteen year relationship, Wife acted as a mother to Joyners adopted daughter to the extent that the daughter believed Wife was, in fact, her mother.  Eventually, after Joyners stroke, Wife moved in with Joyner as his caregiver and, in lieu of pay, lived rent free.  Wife also admitted she was living with Joyner when the underlying action was commenced, but maintains the relationship was not sexual.  We find there is evidence in the record to support a conclusion that Wifes relationship with Joyner was more intimate than one between friends.  Therefore, we affirm the reduction of alimony to zero pursuant to the Final Order and Decree of Divorce.  We also affirm the courts order requiring Wife to reimburse Husband for alimony payments since the filing of the underlying complaint.
II.      Attorneys Fees
Wife contends the court erred in requiring her to pay $15,000 of Husbands attorneys fees.  We agree.
The decision whether to award attorneys fees is a matter within the family courts sound discretion and will not be overturned absent an abuse of discretion.  Stevenson v. Stevenson, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988).  In determining whether to award attorneys fees, the court should consider the parties ability to pay their own fees, the beneficial results obtained by the attorney, the parties respective financial conditions, and the effect of the fee on each partys standard of living.  E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).
Husband is in a much greater financial position to pay his own attorneys fees compared to Wife.  According to financial declarations provided by the parties, Husband earns around $6,000 per month more than Wife.  In addition, Husband has approximately $350,000 more total property than Wife.  After subtracting spousal support pursuant to our holding in this case, Wife has a net monthly income of roughly $1,150.  Wifes total property is valued at around $30,000.  Wife has far fewer assets and earnings than Husband.  In addition, Husband has the ability to pay his own fees, while Wifes standard of living will be greatly decreased if she is forced to pay Husbands attorneys fees in addition to her own.  Accordingly, based on our own review of the factors outlined in E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992), we find both parties shall bear the burden of their own attorneys fees in the family court.
CONCLUSION
We find there is evidence in the record to support the family courts decision to reduce alimony to zero pursuant to the agreement incorporated into the Final Order and Decree of Divorce.  Additionally, we find that, analyzing this case under the factors outlined in E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992), it was error to require Wife to pay $15,000 of Husbands attorneys fees.  Therefore, the family courts order is
AFFIRMED IN PART and REVERSED IN PART.
HEARN, C.J., WILLIAMS, J., and KEMMERLIN A.J., concur.